GIBBONS, APPELLANT, *v.* PRICE ET
AL., APPELLEES.

(No. 50517 — Decided May 12, 1986.)

James M. Hungerford, for appellant.
Arlene B. Steuer, for appellees.

PATTON, J. This appeal arises as a result of the judgment entered by the Cuyahoga County Court of Common Pleas which granted the motion for directed verdict made by the appellees and dismissed the complaint in its entirety at the close of plaintiff-appellant's case. The facts giving rise to this appeal as contained in the record provide:

On February 19, 1982, plaintiff-appellant, Dorothy Gibbons, filed her complaint which alleged legal malpractice, breach of contract and other various torts on the part of the appellees, John T. Price, Michael E. Cozza and Cozza & Steuer (an Ohio partnership). On March 11, 1982, appellant filed an amended complaint which included an additional count in unjust enrichment.

On April 9, 1982, appellees filed a motion to strike as insufficient the claim of the appellant. On May 12, 1982, the court overruled the motion. On May 25, 1982, appellees filed a motion for reconsideration. On July 15, 1982, the motion was denied.

On August 12, 1982, appellees filed a joint answer and counterclaim. The counterclaim alleged that attorney fees were due and owing. On August 19, 1982, appellant filed a motion for default judgment pursuant to Civ. R. 55. Appellant alleged that appellees had fourteen days to file an answer after the court's decision on May 12, 1982 to overrule their motion to strike. Since appellees failed to show some sort of excusable neglect, they were in default.

On August 20, 1982, eight days after filing their answer and counterclaim, the appellees filed their motion for leave to file answer and counterclaim.

After the appellees had filed a brief in reply to the appellant's motion for default judgment, and other pleadings, briefs and filings were made and filed by both parties regarding same, the trial court granted the appellees' motion for leave to file answer and counterclaim and denied the appellant's application for default judgment on September 7, 1982.

Discovery procedures were instituted. On December 23, 1983, after receiving leave of court, appellant filed a motion for summary judgment as to liability only. On August 29, 1984, trial commenced and continued August 30, September 4 and September 5, 1984, at which time appellant rested.

Upon the close of appellant's case, appellees' counsel moved for a directed verdict as to those matters set forth in the portion of appellant's complaint, namely Count I, paragraphs 15 and 16, which referred to medical damages. After arguments from the respective counsel, the trial court granted appellees' motion. In addition, the court ruled that the entire complaint was dismissed at appellant's costs.

On October 4, 1984, appellant filed her notice of appeal. On April 3, 1985, this court dismissed the appeal for failure to resolve the counterclaim. On May 2, 1985, appellant filed a motion for directed verdict and for other relief upon appellees' counterclaim. On June 6, 1985, the motion was granted. On July 2, 1985, appellant filed her notice of appeal.

The record provides that the appellant obtained a divorce from her husband, Richard Wadsworth, in the Cuyahoga County Court of Common Pleas in May 1969. The divorce decree gave appellant custody of two of the parties' four children, David and Susan. The decree also provided that appellant had the right to occupy the marital property until Susan reached the age of twenty-one or until the appellant remarried or the property was sold, whichever was sooner. The decree also specified that only members of the immediate Wadsworth family shall live in the premises.

The decree ordered Richard Wadsworth to pay child support of fifteen dollars per week for David and Susan. The husband also had to assume sole responsibility for all financial obligations incurred by the parties during the course of their marriage. The decree further provided:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the title to the above mentioned property, known as 21961 Robinhood Drive, Fairview Park, Ohio, shall remain in the name of the parties to this action, and that *the equitable interest of the plaintiff [Dorothy Wadsworth] shall be frozen at the fair market value of same as of the date of the signing of this decree by the court,* and that the parties to this action shall obtain in writing said value by ordering a written appraisal from the bank or lending institution now holding the first mortgage, or other reputable appraisers and the equitable interest of the plaintiff shall be set at 1/2 of said appraised value." (Emphasis added.)

At the time of the divorce, there were two mortgages on the marital property. The first was a bank loan from Third Federal Savings & Loan to Richard D. and Dorothy M. Wadsworth. The second mortgage consisted of a promissory note for eleven thousand dollars dated December 14, 1967 from Richard and Dorothy Wadsworth to appellant's mother, Dorothy Masterson. The note was made payable out of the escrow upon the sale of the marital home, or within one year after the death of Mrs. Masterson, whichever was sooner. The note was secured by a mortgage given from the Wadsworths to Masterson on December 14, 1967.

In 1970, appellant began seeing William Gibbons. Appellant testified that by 1976, she considered herself and Gibbons to have a common-law marriage. However, the testimony is unclear as to the actual date of marriage. Appellant had also testified that she did not consider herself legally married until 1980 when she and Gibbons went through a formal ceremony in Hawaii.[1] She also testified that in March 1979, in Lexington, Kentucky, she and Gibbons went through what she thought was a marriage ceremony before a minister. She found out later and Gibbons also testified that the marriage ceremony was phony. Gibbons testified that one of his "buddies" married them in order for appellant to obtain hospitalization benefits which would accrue to her as a wife under a policy available to Gibbons. Gibbons testified that his reasons for the phony marriage were to prevent appellant from feeling guilty about cheating the health and welfare people.

In addition, by 1978, appellant and Gibbons had been filing income tax returns as husband and wife. Gibbons was also contributing money to the household. Both appellant and Gibbons testified that Gibbons never lived in the home until after they were married in 1980.

Approximately two years after the divorce, Richard Wadsworth began making regular child support payments through the court. Prior to that time, payments were sporadic. On January 4, 1978, Richard Wadsworth died. Following his death, appellant began making payments on the Third Federal mortgage, taxes and homeowners insurance. She also advanced two hundred fifty dollars for the decedent's funeral.

On or about April 17, 1979, the appellees agreed to represent the appellant concerning the estate of Richard Wadsworth. Appellant had brought with her a motion that had been filed in domestic relations court by her children as heirs to their father's estate. They were attempting by a Civ. R. 60(B)(4) motion to modify the divorce decree to obtain an immediate sale of the marital home to free the interest of the decedent. The motion was subsequently dismissed.

On June 19, 1979, Daniel M. Wadsworth, appellant's son, was appointed administrator of his father's estate. On July 31, 1979, Daniel Wadsworth as administrator filed a petition in probate court for authority to sell the marital home to satisfy the debts of the estate. Meanwhile, appellees subsequently presented a written claim on behalf of the appellant against the decedent's estate. Appellee, John T. Price, testified that the written claim was hand-delivered by a law clerk, Charles Vargas, who worked at Cozza & Steuer, to the fiduciary of the estate, prior to the statutory deadline of September 19, 1979. However, Price had no written proof or personal knowledge of the delivery. Price did send a certified letter enclosing a copy of the claim to the attorney for the decedent's estate. The letter was stamped "received on September 24, 1979."[2]

The appellant's claim was rejected by the administrator on September 27, 1979. Appellee Price testified that he had received prior notification by the attorney for the decedent's estate that

---

[1] Appellant's testimony is supported by a subsequent finding of the land sales referee on March 31, 1980 as to the disposition of the real estate. See *infra.*

[2] The issue of whether or not the claim was filed before the statutory deadline was settled in *Wadsworth* v. *Wadsworth* (Mar. 12, 1981), Cuyahoga App. No. 42708, unreported, wherein this court stated that the claim was filed on September 17, 1979. See *infra.*

the claim was going to be rejected. Price testified that the rejection was *not* based upon an untimely filing. On the date of rejection, appellees filed a counterclaim on behalf of the appellant in the land sale proceeding asserting the items previously rejected as claims against the estate.

On March 31, 1980, the referee filed his report and found:

"The court further finds that the allegations in the complaint are true and that the undivided one-half interest in the real estate described in the complaint should be sold for the reason that the monies are needed to pay the debts and expenses of administration of the estate.

"The court further finds that *the remaining undivided one-half interest in the real estate* is owned by the defendant, Dorothy Wadsworth, *who is unmarried;* and that the entire interest in the real estate should be sold as demanded by the plaintiff." (Emphasis added.)

The appellant was granted one half of the currently appraised value of the property. The referee also allowed the first and second mortgages as valid liens against the entire property. However, the referee dismissed appellant's counterclaim for want of subject matter jurisdiction. On July 1, 1980, the trial court adopted the referee's report, overruled appellant's filed objections to the report and dismissed the counterclaim. Timely notice of appeal was filed. On March 12, 1981, this court upheld the lower court's ruling. The court held in part:

"*On September 17, 1979, appellant served upon the administrator a claim for the following expenditures paid by appellant* after the death of decedent: $1,755.00 for real estate taxes, $100.00 per month for mortgage payments, and $134.00 per year for insurance premiums. In addition, appellant asserted a claim for accrued un-paid child support and $250.00 paid by appellant to assure a proper burial for decedent. On September 27, 1979, the administrator rejected appellant's claims in writing, and *appellant filed an answer to the administrator's petition and a counterclaim in the probate court.*

"* * *

"Under the provisions of R.C. Sec. 2117.12, a statute of limitations of two months is established for prosecution of an action on a rejected claim. Such action must be commenced within the statutory period in a court of competent jurisdiction. In construing the provisions of R.C. Sec. 2117.12, and the predecessor provisions of the General Code, *it has been firmly established by Ohio courts that the commencement of an action on a rejected claim should be filed in a trial court of general jurisdiction. The probate court is without jurisdiction to entertain an action on a rejected claim.*" (Citations omitted; emphasis added.)

During the proceedings in the land sale action, the appellees were making an effort to settle the claims of the appellant against the estate of her ex-husband. Appellee Price testified that in 1981, as a result of his efforts, appellant had the opportunity to buy out the estate's interest in the property for twenty-four thousand dollars but rejected it. Appellant testified she could not afford the amount.

On June 2, 1981, appellant received a memo from appellee Price which contained a copy of the adverse appellate court ruling as to the land sales counterclaim. In November 1981, appellant changed attorneys. On February 19, 1982, on the advice of her new attorneys, appellant filed her complaint against the appellees founded in legal malpractice and breach of contract.

On or about March 4, 1982, appellees sent a correspondence to the

appellant advising that in view of the legal malpractice action having been filed, the appellees could no longer represent the appellant and further advising that a complaint regarding the appellant's claims against the decedent's estate must be filed not later than March 11, 1982, based upon R.C. 2305.19 (the one-year saving statute).

On March 22, 1982, appellant filed a complaint against the decedent's estate pursuant to R.C. 2305.19 setting forth her claims. Appellees were allowed to file an *amicus* brief to protect their interests. The case was dismissed upon a motion of the defendant estate.

In the present action for legal malpractice and breach of contract, appellant seeks to collect the value of the claims she said were lost in the proceedings against the estate of Richard Wadsworth, to collect her attorney fees and to award judgment for emotional harm which resulted from the aggravation of a medical condition.[3] At the close of appellant's testimony, appellees filed a motion for directed verdict as to the medical damages. The court granted that motion then proceeded to dismiss the entire complaint.

On appeal, appellant assigns four errors:

"I. The trial court erred in granting the appellees' motion for leave to file answer and counterclaim, and denying appellant's application for default judgment.

"II. The trial court erred in granting the appellees' motion for directed verdict and dismissing the appellant's complaint in its entirety, at the close of plaintiff's case.

"III. The trial court erred in dismissing the appellant's complaint in its entirety on the court's own initiative, at the close of appellant's case, without a motion requesting such a ruling by either party, and without giving opportunity to the appellant to be heard or to respond with regard to such matters.

"IV. The trial court erred in ruling that the evidence demonstrated that the appellant's damages were speculative only and therefore dismissing the appellant's complaint in its entirety."

I

In her first assignment of error, appellant contends that the trial court abused its discretion in granting the appellees' motion for leave to file answer and counterclaim and in denying the appellant's motion for default judgment. This contention is without merit.

Civ. R. 55 provides in part:

"(A) Entry of judgment. When a party against whom a judgment for affirmative relief is sought *has failed to plead or otherwise defend as provided by these rules,* the party entitled to a judgment by default shall apply in writing or orally to the court therefor; * * *. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties." (Emphasis added.)

In *Miller* v. *Lint* (1980), 62 Ohio St. 2d 209, 16 O.O. 3d 244, 404 N.E. 2d 752, the plaintiffs filed a complaint on February 9, 1977. *No* responsive

---

[3] Appellant concedes in her appellate brief that the trial court's ruling directing a verdict as to plaintiff's claim for medical damage was a proper one. She is not contesting the ruling to that extent.

pleading or request for an extension was filed within rule. On April 13, 1977, with no answer filed, plaintiffs filed a motion for a default judgment. Then on April 14, 1977, the defendant filed her answer and the trial court permitted that case to go forward. The Ohio Supreme Court held:

"Civ. R. 12(A)(1) expressly provides that '[t]he defendant shall serve his answer within twenty-eight days after service of the summons and complaint upon him.' Hence, the defendant in this case was required to file her answer or to request an extension on or before March 9, 1977, but the record discloses that she did neither.

"*In the absence of any action by the defendant* and pursuant to Civ. R. 55(A), the plaintiffs exercised their right to move for a default judgment, but apparently no action was taken in the trial court upon this motion.

"Instead, the defendant, upon receiving notice of the motion for a default judgment, proceeded to file her answer, but this filing did not comport with the requirements of Civ. R. 6(B)(2), which provides that such a late filing can only be accomplished 'upon motion' and 'where the failure to act was the result of excusable neglect.'

"* * *

"While this court is in general agreement with the universal practice of allowing trial courts broad discretion in settling procedural matters, such discretion, as evidenced by Civ. R. 6(B), is not unlimited, and under the circumstances existing on April 14, 1977, some showing of 'excusable neglect' was a necessary prelude to the filing of the answer. Furthermore, the *failure of the defendant to comply, even substantially, with the procedures outlined in the Civil Rules subjected her to the motion for a default judgment, and the plaintiffs, having complied with the Civil Rules, had a right to have their motion heard and decided* before

the cause proceeded to trial on its merits." (Emphasis added.) *Id.* at 214, 16 O.O. 3d at 247, 404 N.E. 2d at 755.

In *Reese* v. *Proppe* (1981), 3 Ohio App. 3d 103, 105, 3 OBR 118, 120, 443 N.E. 2d 992, 996, this court held:

"Current Civ. R. 55(A) also incorporates this long-standing concept that a default judgment is proper when, and only when, a defendant has not contested the plaintiff's allegations by pleading or 'otherwise defend[ing]' such that no issues are present in this case. Civ. R. 55(A) provides that a default judgment may be rendered '[w]hen a party against whom a judgment for affirmative relief is sought has *failed to plead or otherwise defend* as provided by these rules * * *.' Significantly, the Staff Note to Civ. R. 55 cites with approval a case in which *the recognition of the default judgment's applicability only as a means of disposing of noncontested cases was* crucial." (Emphasis added in part.)

The court in *Reese* found that since the appellant answered the complaint *before* the motion for default judgment was filed (even though the complaint was filed beyond the twenty-eight days), the appellant had entered a plea or otherwise defended the case. Since the case was not uncontested, a default judgment could not have been the proper pleading. The court was then forced to examine whether the trial court had the inherent power to render a judgment on the merits without hearing evidence of liability or damages as a method of sanction. This court held:

"We are of the view that it is unreasonable for a court to make an order which impedes a defendant's ability to fully defend at trial against the allegations raised by the plaintiff. The very premise of our legal system is the proof of truth in order to justly resolve disputes. *Except in cases of serious transgressions by a party*

*which indicate a party's complete disregard for court procedures* designed to produce the imminent resolution of a lawsuit, *a court is generally limited to holding a party who· disregards its order in contempt or imposing some other reasonable sanction.* An order depriving a party of his or her day in court is too harsh a sanction for that party's failure to abide by an order of the court which merely regulates procedure prior to trial." (Footnote omitted; emphasis added.) *Id.* at 107, 3 OBR at 122, 443 N.E. 2d at 997.

In the case *sub judice,* appellant filed her complaint on February 19, 1982 and her amended complaint on March 11, 1982. Appellees filed a motion to strike as insufficient the claim of the appellant on April 9, 1982. The motion was overruled on May 12, 1982. Appellant argues that pursuant to Civ. R. 12(A)(2)(a), the appellees' answer and counterclaim became due on May 26, 1982. However, on May 25, 1982, appellees filed a motion for reconsideration of the motion to strike. The court denied the motion on July 15, 1982. Therefore, pursuant to appellant's argument, appellees had until July 29, 1982 to file an answer.[4] However, by filing the motion to strike and then the motion for reconsideration, the appellees have entered a plea or otherwise defended the case. Civ. R. 55(A). Therefore, a motion for default judgment cannot be granted because the case is not uncontested. See *Reese, supra.*

The appellees filed their answer and counterclaim on August 12, 1982. On August 12, 1982, appellant filed her motion for default judgment. On August 20, 1982, appellees filed their motion for leave to file an answer and counterclaim. Since the motion for default judgment was improper given the previous pleadings that were filed, the court then had to decide whether to render judgment on the merits without hearing any evidence. The trial court properly denied the motion for default judgment and granted appellees' motion for leave to file the answer and counterclaim. There is evidence that the appellees attempted to substantially comply with the Rules of Civil Procedure. See *Miller* v. *Lint, supra.* Therefore, absent a serious transgression or flagrant disregard of the rules, a defendant should be allowed to fully defend at trial any allegations raised by the plaintiff.

Accordingly, appellant's first assignment is without merit.

## II

Appellant's second and third assignments of error are interrelated and will be discussed jointly. In these assignments, appellant contends that the court abused its discretion and ruled contrary to law and evidence by

---

[4] In *Pitts* v. *Dept. of Transportation* (1981), 67 Ohio St. 2d 378, 379-380, 21 O.O. 3d 238, 239, 423 N.E. 2d 1105, 1106-1107, the Ohio Supreme Court held in footnote 1:

"Interlocutory orders are subject to motions for reconsideration, whereas judgments and final orders are not. This court is specifically denying motions for reconsideration in the trial court only after final judgments.

"Civ. R. 54(B) allows for reconsideration or rehearing of interlocutory orders. The rule, when discussing interlocutory orders, states, in pertinent part, that they are 'subject to revision at any time before the entry of judgment adjudicating the claims and the rights and liabilities of all the parties.' Therefore, a motion for reconsideration would be the proper procedural vehicle for obtaining relief after interlocutory orders.

"For further discussion of this matter, see Browne, 13 Akron Law J. 313, fn. 136."

granting the appellees' motion for directed verdict and then dismissing the complaint in its entirety at the close of the appellant's case. The court erred by dismissing the entire complaint on its own initiative without a motion made by either party for complete dismissal and without giving appellant the opportunity to be heard or to respond to the matters. These contentions are without merit.

Civ. R. 50(A) provides:

"(A) Motion for directed verdict.

"(1) When made. A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence.

"(2) When not granted. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.

"(3) Grounds. A motion for directed verdict shall state the specific grounds therefor.

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

"(5) Jury assent unnecessary. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."

In the present case, appellant admits that the trial court's ruling directing a verdict as to appellant's claim for medical damage was a proper ruling. She argues in her second and third assignments that the court does not have the power to direct a verdict and dismiss the entire complaint on its own initiative without a motion made by either party or the opportunity for the parties to be heard. Therefore, we must decide if the court has that inherent power.

Civ. R. 50(A) is silent as to the power of a trial court to grant a directed verdict *sua sponte.* Research discloses that the only Ohio case on point is *English* v. *Halishak* (Nov. 30, 1984), Geauga App. No. 1136, unreported, where the trial court *sua sponte* directed a verdict as to liability against appellant and co-defendant. In that case the Geauga County Court of Appeals held at 3:

"Although Civ. R. 50(A) is silent as to the power of a trial court to grant a directed verdict *sua sponte* and research fails to disclose Ohio cases on point, *if a court determines, on its own, that reasonable minds could come to but one conclusion upon the evidence submitted, a court should be able to remove the issue from the jury on its own motion.* Such a conclusion is consistent with federal decisions under Civ. R. 50 of the Federal Rules of Civil Procedure which is similar to Civ. R. 50 of the Ohio Rules of Civil Procedure in all relevant aspects. *Aetna Cas. & Sur. Co.* v. *L. K. Comstock [& Co.], Inc.* ([D. Nev.] 1980), 488 F. Supp. 732[5]; *Peterson* v. *Peterson* ([C.A. 8,] 1968),

---

[5] It should be noted that *Aetna Cas. & Sur. Co.* v. *L. K. Comstock & Co., Inc.* (D. Nev. 1980), 488 F. Supp. 732, was reversed on other grounds in (C.A. 9, 1982), 684 F. 2d 1267.

400 F. 2d 336." (Emphasis and footnote added.)

In *Aetna,* the court ordered several directed verdicts *sua sponte* at the end of the trial and before questions were submitted to the jury. The court held at 734:

"The source of a federal district court's judicial authority to order a verdict on its own motion is threefold. *First, is the language in Rule 41(b), FRCP,* contemplating, in addition to the dismissal on motion of the defendant for failure to prove a claim, a 'dismissal not provided for in this rule.' *Second, Rule 50(a), FRCP,* while referring to a motion for directed verdict, only concerns itself with a motion made by a party and the effect of a denial of such a motion. *Third is the Court's inherent and independent discretionary powers.* Those courts that have addressed this question have agreed that a district court does have the power to grant directed verdicts sua sponte. *Safeway Stores* v. *Fannan,* 308 F. 2d 94, 98-99 (9th Cir. 1962); *Peterson* v. *Peterson,* 400 F. 2d 336, 343 (8th Cir. 1968)." (Emphasis added.)

In *Peterson,* the trial court *sua sponte* directed the jury to answer a special interrogatory in the affirmative. On appeal, the Eighth Circuit Court of Appeals held at 343:

"Furthermore, *we know of no rule which requires a formal motion by one side before a trial court may draw a legal conclusion and direct a verdict.* It is true that Rule 50(a), Fed. R. Civ. P., refers to a motion for directed verdict, but that rule is one which concerns a motion when it has been made and the effect of a denial of such a motion. If one refers to Rule 49(a), he sees that it authorizes the court to require a jury 'to return only a special verdict in the form of a special written finding upon each issue of fact.' If there is no issue of fact, the submission is not required and the absence of a motion surely does not make submission compulsory. We have in mind that a trial court has wide discretion as to the use of special verdicts. *McDonnell* v. *Timmerman,* 269 F. 2d 54, 58 (8 Cir. 1959); *Great American Ins. Co.* v. *Horab,* 309 F. 2d 262, 266 (8 Cir. 1962); *Lowery* v. *Clouse,* 348 F. 2d 252, 260 (8 Cir. 1965); 5 Moore's Federal Practice (2d ed.), para. 49.-03[1]. And in *Siegfried* v. *Kansas City Star Co.,* 298 F. 2d 1, 8 (8 Cir. 1962), cert. denied 369 U.S. 819, 82 S. Ct. 831, 7 L. Ed. 2d 785, it is evident that we approved the submission of special interrogatories without motion therefor.

*"We see no reason to indulge in the useless formality of requiring a motion for a direction on a special interrogatory when the record leaves no issue of fact to be resolved by that interrogatory."* (Emphasis added.)

In the above cases, the trial court directed a verdict *sua sponte.* In contrast, in the case *sub judice* a motion for a directed verdict was made, albeit the motion was only directed to the medical damages. Therefore, if case law has held that the court has the inherent power to grant *sua sponte* a motion for a directed verdict, we see no reason why a trial court does not have the power to enlarge a specific motion for a directed verdict to include a dismissal of the entire complaint. A trial court is vested with inherent and independent discretionary powers. If the court determines on its own that reasonable minds could come to but one conclusion upon the evidence submitted, then the court should be able to remove the issue from the jury whether or not a party files a motion.

Therefore, the trial court did have the inherent power to grant a directed verdict *sua sponte.*

Accordingly, appellant's second and third assignments are without merit.

## III

In her fourth assignment of error, appellant contends that the court erred in dismissing the complaint in its entirety based upon its finding that the damages were speculative only. This contention is well-taken.

In the previous section we determined that a trial court has the inherent right to dismiss an entire complaint *sua sponte.* However, the court must adhere to Civ. R. 50(A)(4) before the complaint can be dismissed. In its explanation for dismissing the complaint the court held:

"THE COURT: Well, I tried carefully to listen to the evidence presented by the plaintiff, and as counsel well knows, at this point in the trial, I should not take the case from the jury unless reasonable minds can come to one conclusion, and *as far as negligence is concerned, the defendant did go to an attorney who stated that the standard of care was violated by Mr. Price, which is a question of fact for the jury, at least at this point.*

"However, in any negligence case or any breach of contract case, *there must be some damage as a result of that negligence or as a result of the breach of contract,* and therein lies the plaintiff's problem, as I see it. *I don't believe that the plaintiff has established, by a preponderance of the evidence, that as a direct and proximate result of the defendant's negligence, if any, of the defendant's breach of contract, if any, that the plaintiff has established that she suffered the things that she claims she did as a direct and proximate result of the defendant's negligence or breach of contract.*

"Most certainly, this lady has had a lot of problems, some of them of her own doing and some of them are not of her own doing, but they involve family problems between she [*sic*] and her children, between she [*sic*] and her husband, between her present husband and her children.

"I don't see how you can, in any way, attribute that to the negligence, if any, or breach of contract, if any, of Mr. Price, either to the aggravation as to the cause of her nervousness or other physical ailments or mental ailments that she may have, which she claims is [*sic*] a direct and proximate result of the negligence of Mr. Price.

*"In my judgment, it's mere speculation as to her suffering any damage as a direct and proximate result of the negligence of the defendant Mr. Price, either through the theory of negligence or through the theory of breach of contract.* And I shouldn't let the case go to the jury on pure speculation of damages, let alone the question of negligence and breach of contract. And that is my judgment, the jury can come to one conclusion, and they [*sic*] have not established any damage directly and proximately caused by Mr. Price.

"The motion for directed verdict is sustained and the entire claim is dismissed, and the costs be taxed against plaintiff." (Emphasis added.)

In *Minick* v. *Callahan* (1980), 24 O.O. 3d 104, the Lucas County Court of Appeals held in its syllabus:

"In order to establish a claim of legal malpractice based on an alleged failure to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated, expert testimony is necessary to establish such standards. If plaintiff fails to introduce such testimony, the defendant attorney is entitled to a directed verdict."

In *Minick,* the court recited the necessary elements of an attorney's malpractice case:

"In an action against an attorney for negligence the client has the burden of proving the *existence of the attorney-client relationship, the acts*

*constituting the alleged negligence, that the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged.* 7 Am. Jur. 2d *supra,* page 156, Section 188." (Emphasis added.) *Id.* at 105.

See, also, *Bloom* v. *Dieckmann* (1983), 11 Ohio App. 3d 202, 11 OBR 298, 464 N.E. 2d 187.

In the case *sub judice,* the appellees admit the first element, *i.e.,* existence of the attorney-client relationship. In addition, the trial court acknowledged that the question of liability based on negligence and/or breach of contract *was a question of fact* for the jury since the appellant put forth evidence by way of an expert witness who testified that appellee, John T. Price, violated the standard of care owed to the appellant. Therefore, the only issues which are disputed in this case are the questions of the proximity and/or causation of the injury by the negligence, and the fact and extent of the injury alleged. The court ruled that appellant's damages were speculative only. This ruling is incorrect.

In dealing with the issue of proximate cause we must determine whether but for the actions of the appellees in failing to appeal appellant's rejected claim to the court of common pleas, the appellant would presently be in a more favorable position. In the present case, each party presents a series of numbers, equations and end results involving the alleged claims. However, the record clearly demonstrates that at the very least, appellant has put forth sufficient evidence to raise a question of fact for the jury as to the existence and extent of her claims as well as the validity and collectibility of her claims against the estate.

In sum, pursuant to Civ. R. 50(A)(4), the trial court erred when, after construing the evidence most strongly in favor of the appellant, the court found that upon any determina-tive issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the appellant. Therefore, although a trial court has the inherent power to enter a directed verdict *sua sponte,* in the case *sub judice,* the court failed to satisfy the requirements of Civ. R. 50(A)(4) and the directed verdict based upon speculative damages was incorrect.

Accordingly, appellant's fourth assignment is well-taken.

Judgment is reversed and remanded.

*Judgment accordingly.*

ANN MCMANAMON, P.J., and STILLMAN, J., concur.

STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.