DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. The jury found Kevin W. Trego, defendant below and appellant herein, guilty of burglary in violation of R.C. 2911.12, a felony of the third degree.
 {¶ 2} Appellant raises one assignment of error for review:
i. "The verdict of the jury was against the manifest weight of the evidence."
 {¶ 3} On August 22, 2003, the Ross County Grand Jury returned an indictment charging appellant with one count of burglary in violation of 2911.12 and one count of breaking and entering in violation of R.C. 2911.13.[1] On January 22 and 23, 2004, the trial court conducted a jury trial to consider the charges.
 {¶ 4} At trial, Lex E. Hawk, Jr. testified that on August 6, 2003 at approximately 11:00 p.m. he returned from his parents home to his home on Sullivan Road. Hawk observed a vehicle on Sullivan Road traveling five to ten miles per hour. The vehicle had an open trunk lid.
 {¶ 5} Subsequently, Hawk observed the vehicle stop at James Withrow's residence. Withrow rented a house approximately one hundred twenty yards from Hawk's residence. Hawk drove his truck to the Withrow residence and parked in the driveway. Hawk then heard "banging" in the garage. Hawk returned to his vehicle and honked his horn. Soon, the vehicle in question left Withrow's residence and Hawk followed. After two miles and at the point where Sullivan Road intersects with Trego Creek Road, Hawk observed the vehicle leave the roadway, go over an embankment and come to rest in a field. Hawk directed his bright beam headlights on the vehicle and then walked to a neighbor's home to call 911.
 {¶ 6} After Hawk returned to the scene, he testified that he observed the appellant, from a distance of approximately thirty feet and under the glare of the headlights, for three or four minutes as the suspect attempted to restart the damaged vehicle. Unsuccessful in this endeavor, the suspect then exited the vehicle, looked directly at Hawk and ran to the nearby words.
 {¶ 7} Hawk also testified that he subsequently identified the appellant in a photograph identification line-up. Hawk noted that during his attempt to identify the appellant's picture from the six photograph line-up, he placed paper over a portion of the subjects' heads in order to mimic the actual suspect's blue bandanna worn on the evening in question.
 {¶ 8} Other witnesses testified at trial including, inter alia, Ross County Sheriff's Deputy Mont Steele, BCII Agent William Hatfield, Chillicothe Police Department Officer Charles Campbell, and forensic scientist Robin Roggenbeck. Steele investigated the accident scene. Hatfield and Roggenbeck noted that a large number of fingerprints were extracted from the vehicle and the items contained in the vehicle, but only two prints from the vehicle's exterior matched the appellant's fingerprints. Campbell testified that he has known the appellant for approximately six years and that on August 6, 2003 at approximately 7:00 p.m., he observed the appellant driving a dark blue Chrysler Fifth Avenue vehicle that looked similar to the Chrysler Fifth Avenue that the suspect drove on Sullivan Road and wrecked near Trego Creek Road.
 {¶ 9} After hearing the evidence and counsels' arguments, the jury returned a guilty verdict with respect to the burglary charge. This appeal followed.
 {¶ 10} In his sole assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence. In particular, appellant argues that the eyewitness identification testimony is, in light of the evidence adduced at trial, not credible and does not support appellant's conviction. We disagree with the appellant.
 {¶ 11} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses. Additionally, the court must bear in mind that credibility generally is an issue for the trier of fact to resolve. See State v. Issa
(2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Thomas
(1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. Dehass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 12} It is fundamental that the trier of fact is to determine the weight given the evidence and the credibility given to the testimony of witnesses. See State v. Dye ((1998),82 Ohio St.3d 323, 329, 695 N.E.2d 763, 768; State v. Frazier
(1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014; State v.Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721, 732.
Accordingly, the trier of fact may believe all, part, or none of the testimony of each witness who appears before it. SeeState v. Long (1998), 127 Ohio App.3d 328, 335, 713 N.E.2d 1,5; State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 N.E.2d 80, 88; State v. Harrison (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144, 1147. We also acknowledge that a trier of fact is much better situated than an appellate court to view the witnesses and observe their demeanor, their gestures and their voice inflections, and to use those observations to weigh the credibility of their testimony. See State v. Shin (1997),118 Ohio App.3d 637, 641; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, reviewing courts should generally defer to the trier of fact on matters of evidentiary weight and witness credibility.
 {¶ 13} Once a reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" See State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541 (quoting State v. Martin [1983],20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "`exceptional case in which the evidence weighs heavily against conviction.'"Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quotingMartin, 20 Ohio App.3d at 175, 485 N.E.2d 717); see also,State v. Lindsey (2000), 87 Ohio St.3d 479, 483,721 N.E.2d 995, 1002.
 {¶ 14} In the case at bar, appellant asserts that the sole issue is the burglar's identity. Appellant notes that Hawk observed the suspect for only a few seconds in the dark of night and that the circumstances in this particular case weigh against giving weight to the identification testimony. Appellant points out that his fingerprints matched only prints collected from the vehicle's exterior and not the items contained in the vehicle. Appellant also points to the lack of other evidence to connect the appellant to the crime.
 {¶ 15} Consequently, the appellee argues that Hawk had both ample time and the opportunity to observe and to identify the appellant, and that this identification is a matter of evidence weight and credibility that the trier of facts must resolve.
 {¶ 16} Courts have long recognized the danger associated with unreliable eyewitness identification and the fact that misidentification can, and does, occur. Consequently, courts must examine the facts that surround eyewitness identification to determine whether the witness had the capacity and an adequate opportunity to observe an offender, including the amount of time
 {¶ 17} available for observation, distance, lighting conditions, previous contact, and whether subsequent identification procedures may have influenced the eyewitness identification. We further note that with respect to out-ofcourt identification evidence, testimony is properly admitted unless the identification procedure was so impermissibly suggestive that a substantial likelihood of irreparable misidentification exists.State v. Barnett (1990), 67 Ohio App.3d 760, 588 N.E.2d 887,State v. Hill (1987), 33 Ohio App.3d 10, 523 N.E.2d 885.
 {¶ 18} In the case sub judice our review of the record reveals that the prosecution's witness, Lex Hawk, had an ample opportunity to view the appellant. Unlike a passive encounter, Hawk had a high degree of attention directed to appellant at the time of the observation. Hawk followed appellant's vehicle with the belief that appellant had committed a criminal offense. Hawk observed appellant wreck his vehicle, then Hawk positioned his own vehicle's head lights to illuminate appellant's vehicle. Hawk testified that he observed the appellant before he ran to the woods.[2] Additionally, we note that Hawk successfully identified the appellant in the photograph identification line-up and nothing has been established to suggest that the out-of-court photograph line-up was unduly suggestive. In consideration of the foregoing, we believe that the trier of fact had ample evidence to support its conclusion that Hawk correctly identified appellant as the perpetrator.
 {¶ 19} Thus, after our review of the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by choosing to believe the eyewitness identification testimony. We note that appellant's counsel pointed out to the jury possible questions and discrepancies in an attempt to convince the jury to attach little or no weight to Hawk's testimony. The prosecution's case, however, provides substantial evidence upon which the trier of fact could reasonably conclude, beyond a reasonable doubt, that each element of the R.C. 2911.12 burglary offense had been established.
 {¶ 20} Accordingly, based upon the forgoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be issued out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion
[1] At the conclusion of the trial, the jury found appellant not guilty of count two which relates to the breaking and entering charge. The prosecution points out that the two counts of the indictment concerned two separate and distinct incidents that occurred on two separate dates. Obviously, the charge set forth in count two of the indictment is not involved in the instant appeal.
[2] Hawk testified in pertinent part as follows:
"Q. All right. And you saw him in total for a few seconds while he turned and looked at you and while you were watching him in the car.
A. Yeah. Like I say, I was sitting there watching him, you know, standing beside the truck watching him after I called 911. In probably three or four minutes, he was trying to restart the vehicle and then when he realized it wasn't going to restart, he just hopped out of the vehicle, looked straight at me like you are and just turned around and took off running.
Q. All right. That wouldn't have taken very long. When he jumped out of the vehicle, he would have looked at you for a few seconds and then took off running; is that right?
A. Yes.
Q. Okay. Further away from you than I am now?
A. Yes, a little bit.
Q. Twice as far?
A. Yeah.
Q. All right. Now, it's dark except for your headlights; they're shined at him?
A. Yes."