[Cite as *Pahoundis Family Group, Ltd. v. Schonauer*, 2019-Ohio-5303.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | | |
|---|---|---|---|
| PAHOUNDIS FAMILY GROUP, LTD. | : | | JUDGES: |
| | : | | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | | |
| | : | | |
| JERRY SCHONAUER, ET AL. | : | | Case No. 2019 CA 002 |
| | : | | |
| Defendants-Appellees | : | | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 17 CV 009


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      December 20, 2019


APPEARANCES:

For Plaintiff-Appellant

MARIO GAITANOS
PETER GAITANOS
437 Market Avenue North
Canton, OH  44702

For Defendants-Appellees

THOMAS J. MULVEY
30 Northwoods Boulevard
Suite 300
Columbus, OH  43235

CRAIG G. PELINI
PAUL B. RICARD
8040 Cleveland Avenue, NW
Suite 400
North Canton, OH  44720

*Wise, Earle, J.*

{¶ 1} Plaintiff-Appellant, Pahoundis Family Group, Ltd., appeals the January 23, 2019 journal entry and the February 4, 2019 judgment entry on verdict form and interrogatories of the Court of Common Pleas of Holmes County, Ohio, accepting a jury's verdict and entering judgment for Defendants-Appellees, Jerry Schonauer and Sweet Breeze Farms & Excavating, LLC.

FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is a real estate group that owns real property in Holmes and Coshocton counties. The properties are leased to farmers who use the land for agricultural purposes.

{¶ 3} On February 21, 2017, appellant filed a complaint against adjacent property owner Jerry Schonauer and John Does alleging trespass, conversion, a violation of R.C. 901.51, and negligence in reference to one of its properties located in Holmes County. Appellant claimed the defendants trespassed on its property and intentionally and/or recklessly and/or negligently removed trees, a cement wall, and a fence, and placed a pole barn on part of its property. On July 24, 2017, appellant filed a first amended complaint to include Sweet Breeze Farms as a party defendant and dropped its claim regarding the pole barn.

{¶ 4} The parties were referred to mediation, but mediation was unsuccessful. A jury trial commenced on December 12, 2018. The jury found in favor of appellees on all claims. The trial court journalized the decision via a journal entry filed January 23, 2019, and a judgment entry on verdict form and interrogatories filed February 4, 2019.

{¶ 5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 6}   "THE TRIAL COURT ERRED IN NOT GRANTING A DIRECTED VERDICT IN FAVOR OF APPELLANT AS IT ESTABLISHED A PRIMA FACIE CASE OF TRESPASS TO LAND AND APPELLEES FAILED TO PRODUCE EVIDENCE REBUTTING THE TRESPASS TO LAND."

II

{¶ 7}   "THE TRIAL COURT ERRED IN NOT ISSUING A JUDGMENT NOTWITHSTANDING THE VERDICT AS THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 8}   In its first assignment of error, appellant claims the trial court erred in not granting it a directed verdict as it established a trespass to land.  We disagree.

{¶ 9}   First, we note appellant never made a motion for a directed verdict and did not bring any arguments to the trial court's attention in that regard.  While this court has held that a trial court may "grant a directed verdict sua sponte," it is certainly not required to do so.  *Parrot v. Spring Industries, Inc.,* 5th Dist. Tuscarawas No. 90AP050039, 1991 WL 64871, *5 (Apr. 24, 1991), citing *Gibbons v. Price,* 33 Ohio App.3d 4, 514 N.E.2d 127 (8th Dist.1986), paragraph two of the syllabus.  A trial court does not err as a matter of course in failing to grant a motion that was never made.

{¶ 10} Civ.R. 50(A) governs motion for a directed verdict and states a trial court shall grant the motion if, "after construing the evidence most strongly in favor of the party

against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Our standard of review of the trial court's decision presents a question of law and therefore our review is de novo. *Shadle v. Morris,* 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906. In this case, there is no trial court decision to review. We are reviewing the absence of a decision.

{¶ 11} As more fully discussed in Assignment of Error II, a review of the evidence submitted establishes reasonable minds could differ on the issue of whether there was an actual trespass. Each side presented evidence that they owned the property in question that contained the trees removed by appellees. A directed verdict sua sponte would not have been proper.

{¶ 12} Upon review, we find the trial court did not err in failing to sua sponte grant a directed verdict to appellant on its trespass claim.

{¶ 13} Assignment of Error I is denied.

II

{¶ 14} In its second assignment of error, appellant claims the trial court erred in not issuing a judgment notwithstanding the verdict ("JNOV") as the jury's verdict was against the manifest weight of the evidence. We disagree.

{¶ 15} First, as in the motion for a directed verdict, appellant never filed a motion for JNOV. In *Pariseau v. Wedge Products, Inc.,* 36 Ohio St.3d 124, 127, 522 N.E.2d 511 (1988), the Supreme Court of Ohio discussed the standard of review on a motion for JNOV as follows:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." *Posin v. A.B.C. Motor Court Hotel* (1976), 46 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338. (Additional citations omitted.)

{¶ 16} Appellate review of a ruling on a motion for JNOV is de novo. *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* 5th Dist. Stark No. 2006CA00048, 2006-Ohio-6232.

{¶ 17} Under a directed verdict standard, we found reasonable minds could differ on the issue of whether there was an actual trespass. Because our analysis is the same under a JNOV standard, we find the granting of a JNOV would have been improper.

{¶ 18} Appellant argues the trial court should have issued a JNOV because the jury lost its way and the verdict was against the manifest weight of the evidence. A challenge to the weight of the evidence is not via a JNOV which goes to sufficiency, but a motion for new trial pursuant to Civ.R. 59(A)(6). Appellant never filed a motion for new

trial; however, "a motion for a new trial [is not] a prerequisite for appellate review of the weight of the evidence" as long as " 'such evidence to be considered appears as a part of the record filed in the appellate court.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 28, quoting in part R.C. 2321.01. The record in this case contains the trial transcript and exhibits for our review.

{¶ 19} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley, supra*. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (Feb. 10, 1982).

{¶ 20} Appellant alleged in part a civil trespass. A civil trespass " 'occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue.' " *Apel v. Katz,* 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998), quoting *Linley v. DeMoss,* 83 Ohio App.3d 594, 598, 615 N.E.2d 631, 633 (10th Dist.1992). Naturally, "[t]o prevail on a claim of trespass, the claimant must prove he had possession of the subject premises at the time of the

trespass." *Northfield Park Associates v. Northeast Ohio Harness,* 36 Ohio App.3d 14, 18 (8th Dist.1987).

{¶ 21} Appellant presented six witnesses. Charles Pahoundis testified to living on the family farm back in the 1970s. T. at 52. Appellant leases out the land to another farmer. T. at 54-55. In early 2015, Mr. Pahoundis went to the property and discovered a whole row of trees missing and laying in the adjacent field, property owned by Mr. Schonauer. T. at 55-56. Only one lone cherry tree remained near a bridge. T. at 65. Mr. Pahoundis testified not only were the trees removed, but the bank of a stream was disturbed and "rip rap" cement to hold up the bank was removed. T. at 56. An old broken fence had also been removed. T. at 57-58. Mr. Pahoundis claimed these items were on appellant's property and no one gave Mr. Schonauer permission to enter on the land and remove the items. T. at 58-59. After the discovery, Mr. Pahoundis caused a survey to be done by Donald C. Baker. T. at 59; Plaintiff's Exhibit 5. Mr. Pahoundis took photographs during this 2015 survey and testified to his interpretation of the pictures. T. at 60-62; Plaintiff's Exhibit 6. Another survey was conducted three years later in 2018 to verify the 2015 survey. T. at 62-63; Plaintiff's Exhibit 8. During the 2018 survey, an arborist was present, William Hahn. T. at 64. Again, Mr. Pahoundis took photographs and testified to his interpretation of the pictures. T. at 64-71; Plaintiff's Exhibits 9 and 11. During the 2018 survey, Mr. Pahoundis did not see any orange flags or any indications of the 2015 survey. T. at 71.

{¶ 22} The next witness was Jerry Schonauer on cross-examination. He lived on his property for over thirty years. T. at 86. Mr. Schonauer had two surveys done, one in 1997 and one in 2017. T. at 87; Plaintiff's Exhibit 7. The 1997 survey was done so Mr.

Schonauer could build a fence between the two properties.  T. at 91-92.  This survey included stakes with red flags on them and a pin in the ground, as well as a cornerstone. T. at 92.  Mr. Schonauer built the fence based on the survey report.  *Id.*  At some point, Mr. Schonauer contacted Jim Martin from Sweet Breeze Farms & Excavating to remove the trees.  T. at 93.  Mr. Schonauer wanted the trees removed because the trees sucked up water which he wanted for his crops, birds would roost in the trees, and the trees would scrap against his vehicle when he drove down the driveway.  *Id.*  Mr. Schonauer trimmed the trees and maintained them.  T. at 94.  Mr. Schonauer admitted he never received permission from appellant to remove the trees, alter the bank, or remove the fence.  T. at 102-103.  He testified he never asked Sweet Breeze Farms to remove any of the rip rap. T. at 105-106.  The invoice from Sweet Breeze Farms does not indicate any work done to remove the rip rap.  T. at 105; Plaintiff's Exhibit 4.

{¶ 23} Charles's brother, Louis Pahoundis, testified.  He also lived on the family farm in the 1970s.  T. at 113.  He testified to having counted twenty-eight trees at one time before they were removed.  T. at 115.  He had counted the trees because his hobby was making maple syrup.  *Id.*  The trees were basically in a straight line.  T. at 118.  He stated the trees were on appellant's property.  T. at 118-119.  He never gave Mr. Schonauer permission to enter the land and remove the items.  T. at 119-120.

{¶ 24} Aaron Gerber conducted the 2015 survey.  T. at 141; Plaintiff's Exhibit 5. He testified to the cornerstone being placed when the properties were first laid out; it's a permanent fixture.  T. at 141-142.  There was a pin located in the road that was found with a metal detector and then dug up.  T. at 142.  He placed a dozen stakes with pink ribbons.  *Id.*  Prior to conducting the survey, Mr. Gerber reviewed records related to the

subject property at the Recorder's Office and the Tax Map Department, as well as the online records of the Auditor's Office. T. at 145. Mr. Gerber also conducted the 2017 and 2018 surveys. T. at 146. The cornerstone, pin, and stakes were in their same relative locations for all three surveys. T. at 146-147. In the 2018 survey, he placed about 15 stakes. T. at 153. In his professional opinion, he opined the lone remaining tree was on appellant's property. T. at 154-155. On cross-examination, Mr. Gerber acknowledged in all of the three surveys he conducted, he never located the cut down trees as to where they were in relation to the remaining lone tree. T. at 162. He "never located any trees in relation to the property line." *Id.* He was never hired to determine the location of the removed trees in relation to the property line and he did not have an opinion on their location. *Id.*

{¶ 25} The next witness was James Martin on cross-examination. Mr. Martin is the owner of Sweet Breeze Farms. T. at 166. He removed the trees Mr. Schonauer asked him to remove. T. at 175, 186. There were a couple sizable trees and a bunch of scrub brush. T. at 179, 187-188. He believed the work he performed was on Mr. Schonauer's property, but based on a photograph he reviewed, "[n]ot by the looks of the survey marker on that end of the bridge." T. at 176; Plaintiff's Exhibit 6. Mr. Martin did not cause a survey to be done. T. at 173. Mr. Schonauer told him to stay off of appellant's property and he did, except on two occasions when he backed his excavator over the property line. T. at 177. Mr. Martin did not remove any rip rap, "that stuff was long gone." T. at 182.

{¶ 26} Charles's brother, John Pahoundis testified. He also lived on the family farm in the 1970s. T. at 193. His testimony basically mirrored the testimony of his two brothers.

{¶ 27} William Hahn, a professional arborist, was hired by appellant in late 2017 to appraise the value of the removed trees. T. at 235. He was unable to measure any stumps as they had been removed, so he "measured the roadway and got a distance" and worked off of pictures to determine the size of the tree heads and found trees in the area that had similar head sizes. T. at 236. He then measured the trunks of those trees and ascertained that some of the removed trees were in excess of twenty-three inches in diameter "by the size of the heads and extrapolating two (2) other trees in the vicinity." *Id.* He determined at least twenty-eight trees had been removed. T. at 240. He stated based on his inspection, the removed trees did not look like they had been on Mr. Schonauer's property. T. at 248. He observed regrowth occurring where the trees had been removed and black locust trees seeding in the area. T. at 249. The black locust trees "appear when soil is disturbed if there are those trees in the area" and they were located on appellant's property. *Id.* There was no question in his mind that the trees had been removed from appellant's property. T. at 250, 254. He based his opinion on the "property line and the existing relationship to the existing cherry tree that was in line with that group of trees." T. at 255. On cross-examination, Mr. Hahn acknowledged that he did not speak with Mr. Schonauer about the removed trees before forming his opinions and "it could have been" helpful in his evaluation. T. at 263. He admitted he could not be sure from the aerial photographs where the trunks were located. T. at 269. From the aerial photograph, there was the potential for twenty-eight trees either two or three feet in

diameter to have been in the removed tree line, but he could not corroborate that.  T. at 269-270.

{¶ 28} Appellees presented two witnesses.  Mary Uhl, Mr. Schonauer's wife, testified she has lived on the property for approximately the past twenty-seven years.  T. at 291.  Over the years, Ms. Uhl passed the tree line several times a day, and disagreed with the claim that it contained twenty-eight trees ranging from two to three feet in diameter.  T. at 294.  She testified to a hickory tree, three maple trees, some saplings, and shrubs.  T. at 293-294.  She and her husband maintained the trees.  T. at 294.  She believed the trees were on their property.  T. at 296.

{¶ 29} Mr. Schonauer testified to having lived on his property for over thirty years.  T. at 309.  In 1997, Mr. Schonauer caused a survey of his property to be done and based on this survey and the placement of the stakes, believed the trees were on his property.  T. at 310, 319.  He removed some trees from the tree line at that time, as the tree line had extended out to the road.  T. at 310-311.  The trees that remained that he subsequently removed shaded his crops, took water from the crops, damaged passing vehicles, and roosted birds that would damage his hay bales.  T. at 311.  He maintained and trimmed the trees.  *Id.*  He did not ask anyone's permission to remove the trees because from the 1997 survey, he believed the trees belonged to him.  T. at 311-312.  He hired Sweet Breeze Farms to shore up the bank of the stream, and never asked Mr. Martin to pull out any rip rap.  T. at 312-313.  Mr. Schonauer would have never removed the trees if he believed them to be on appellant's property.  T. at 314.

{¶ 30} The jury was presented with testimony and exhibits and determined appellant did not prove by a preponderance of the evidence that the trees and the fence

were on its property and that appellees damaged the bank. Judgment Entry on Verdict Form and Interrogatories filed February 4, 2019. As mentioned by plaintiff's counsel during closing argument, credibility is paramount in this case, it is "going to determine this case of the witnesses." T. at 336.

{¶ 31} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 32} Each side offered opposing opinions on the tree line relative to the property line, and there was no clear testimony as to the trees' location following their removal. The jury could have determined that appellant's evidence did not outweigh or overbalance appellees' evidence or the evidence presented was equally balanced therefore appellant did not meets its burden of proof. T. at 328.

{¶ 33} Upon review, we cannot say the jury lost its way. We do not find a manifest miscarriage of justice.

{¶ 34} Assignment of Error II is denied.

{¶ 35} The judgment of the Court of Common Pleas of Holmes County, Ohio is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.

EEW/db