MILLER, A MINOR, ET AL., APPELLEES AND APPELLANTS, *v.* LINT, APPELLANT AND APPELLEE.

[Cite as Miller v. Lint (1980), 62 Ohio St. 2d 209.]

(Nos. 79-1087 and 79-1097—Decided May 21, 1980.)

"*

212

*Messrs. Russell & Marini* and *Mr. Ronald L. Russell,* for appellees and appellants.

*Messrs. Vogelgesang, Howes & Lindamood* and *Mr. Peter Zawaly, Jr.,* for appellant and appellee.

*Per Curiam.*                    I.

The issue for determination in case No. 79-1087 (defendant's appeal) is whether a prior statement of opinion by an eyewitness, not a party to the action, upon the ultimate fact in issue and inconsistent with the testimony of such witness at the trial, is admissible for the limited purpose of impeachment.

In *Schneiderman* v. *Sesanstein* (1929), 121 Ohio St. 80, at paragraph three of the syllabus, this court succinctly responded to a similar question, holding as follows:

"A witness who testifies as to facts cannot be discredited by evidence of the expression of an opinion relative to the merits of the case."

Likewise, in the case of *Cottom* v. *Klein* (1931), 123 Ohio St. 440, which has some factual characteristics similar to those of the present case, this court, in paragraphs one and two of the syllabus, held as follows:

"In a suit against a defendant for personal injuries to the plaintiff arising out of an automobile collision the declaration of an eye witness, who was not a party to the suit, that the accident was caused, not by the defendant's fault but by the fault of the plaintiff, is but the expression of an opinion upon an ultimate issue to be determined by the jury.

"Such declaration made by the eye witness is not competent, either as original or impeaching evidence; and, because of its prejudicial character, its admission for the purpose of impeaching the witness constitutes error."

Defendant concedes that this court must overrule *Schneiderman* and *Cottom* in favor of what she claims is the majority view in the United States in order to sustain her position, but on balance and after careful consideration, we fail to perceive how time has had any undermining influence upon the rationale expressed many years ago in *Cottom,* at pages 444, 447, where the court stated as follows:

"While the court stated that the declarations were admitted for the purpose of impeachment, and 'not to establish any liability or determination of whose fault the accident was,' the undoubted tendency of the admitted testimony was to exculpate the defendant from blame and to place the blame upon the child; and to do this by a mere expression of opinion. The ultimate question to be decided was, who was negligent or at fault? That was a question of fact to be determined by the jury, and should be determined, not by the conclusion or by the opinion of the witness, but by testimony detailing facts and circumstances from which the jury could determine the issue of negligence.

"Certainly it cannot be denied that the defendant, in proving his case, would have been precluded from making Cottom his witness and obtaining his opinion as to the cause of the accident. Since he could not have introduced such opinion as original or substantive testimony, he could not do so by way of indirection under the guise of impeaching the witness."

In our view, the engrossing nature of the *opinion evidence* admitted over objection in the present case completely overshadowed its usefulness for impeachment purposes, and, accordingly, we must decline the invitation to overrule the previous holdings of this court in the *Schneiderman* and *Cottom* cases. The judgment of the Court of Appeals in case No. 79-1087 is affirmed.

## II.

The issue before the court for determination in case No. 79-1097 (plaintiffs' appeal) is whether the trial court abused its

discretion in allowing the defendant to file her answer beyond rule date without regard to the requirements of the Ohio Rules of Civil Procedure.

Civ. R. 12(A)(1) expressly provides that "[t]he defendant shall serve his answer within twenty-eight days after service of the summons and complaint upon him." Hence, the defendant in this case was required to file her answer or to request an extension on or before March 9, 1977, but the record discloses that she did neither.

In the absence of any action by the defendant, and pursuant to Civ. R. 55(A), the plaintiffs exercised their right to move for a default judgment, but apparently no action was taken in the trial court upon this motion.

Instead, the defendant, upon receiving notice of the motion for a default judgment, proceeded to file her answer, but this filing did not comport with the requirements of Civ. R. 6(B)(2), which provides that such a late filing can only be accomplished "upon motion" and "where the failure to act was the result of excusable neglect."

Moreover, Civ. R. 7(B)(1) requires that any motion other than those made during a hearing or at a trial "shall be made in writing," and Civ. R. 6(D) provides for the *service* of any such written motions. Here, however, the record fails to portray compliance with either of these requirements. Likewise, the record fails to disclose that the belated answer filed on April 14, 1977, or 36 days after expiration of the answer date, contained any certificate of service as required by Civ. R. 5(D).

While this court is in general agreement with the universal practice of allowing trial courts broad discretion in settling procedural matters, such discretion, as evidenced by Civ. R. 6(B), is not unlimited, and under the circumstances existing on April 14, 1977, some showing of "excusable neglect" was a necessary prelude to the filing of the answer. Furthermore, the failure of the defendant to comply, even substantially, with the procedures outlined in the Civil Rules subjected her to the motion for a default judgment, and the plaintiffs, having complied with the Civil Rules, had a right to have their motion heard and decided before the cause proceeded to trial on its merits.

However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment. Hence, the judgment of the Court of Appeals in case No. 79-1097 is reversed, and the cause remanded to the trial court for further proceedings according to law.

*Judgment affirmed
in case No. 79-1087.*

*Judgment reversed and cause
remanded in case No. 79-1097.*

CELEBREZZE, C. J., HERBERT, KERNS, SWEENEY and LOCHER, JJ., concur.

W. BROWN, J., dissents in case No. 79-1087 and concurs in case No. 79-1097.

HOLMES, J., concurs in case No. 79-1087 and dissents in case No. 79-1097.

KERNS, J., of the Second Appellate District, sitting for P. BROWN, J.

WILLIAM B. BROWN, J., dissenting in case No. 79-1087.   I dissent in case No. 79-1087 because I believe that it should be permissible for opposing counsel to discredit a lay witness' testimony, by introducing that witness' prior expressions of opinion which contradict the inferences which might be drawn from his testimony. Thus, I would overrule *Schneiderman* v. *Sesanstein* (1929), 121 Ohio St. 80, and *Cottom* v. *Klein* (1931), 123 Ohio St. 440.

The principal practical value of the "opinion rule" is that it can operate as a control on trial procedure, requiring counsel to elicit facts by the most specific questions possible.* McCormick on Evidence (2 Ed.), 69, Section 35. If this is its principal

---

* Wigmore asserts that the difference between so-called fact and opinion is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable demarcation line. Thus, Wigmore believes that the opinion rule should go no further than to exclude opinions as superfluous when more concrete statements could be resorted to. 7 Wigmore on Evidence (Chadbourn Rev.), Sections 1918, 1919.

practical value, then it would appear inappropriate to apply it to out-of-court statements, since trial control as to the form of such expressions is impossible. Additionally, since the prior expression of opinion is not being offered for its truth, but to show its inconsistency with the witness' present testimony, even the theoretical justification for the opinion rule, *i.e.,* to improve testimonial objectivity, can not support its application herein. McCormick, *supra,* at pages 41-42, Section 18, 69-70.

It is true that a jury may ignore a limiting instruction and consider a prior inconsistent expression of opinion for its truth. But this risk is also present when prior inconsistent statements of "fact" are proven extrinsically for impeachment purposes. Courts, however, do not categorically exclude prior inconsistent statements of fact; instead, they run the risk that the jury might ignore a limiting instruction. Courts run this risk in order to minimize the likelihood that a verdict will be based on untruthful testimony. Whether the prior inconsistency be in the form of "fact" or "opinion," I think the jury should hear it. In short, a trial court should ordinarily defer to the jury's ability to follow a limiting instruction, rather than run the risk that a verdict will be based on the testimony of an untruthful witness. In the unusual situation where the prejudicial effect of the prior expression of opinion outweighs its impeachment value, the trial court of course would have the *discretion* to exclude it. Since, I do not think this was the situation herein, I respectfully dissent.