DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Gregory Carlson, d/b/a Aurora Interiors, appeals from the judgment of the Summit County Court of Common Pleas granting Appellee, Gene Woodson, damages of $23,068.74.
 {¶ 2} In March 1999, Appellee sued Appellant for monies due on account for consigned furniture placed with Appellant which Appellant sold. Appellant never paid Appellee the total sums due on the continued consignment relationship. The trial court granted, and then vacated, a default judgment for Appellee. On appeal, this court reversed the vacation of default, and remanded the matter to the trial court for further hearing on damages. The trial court held a hearing on damages on February 14, 2002. The trial court issued its ruling exactly one year later, awarding Appellee $23,068.74 in damages. Appellant timely appealed the judgment, and raises two assignments of error.
 Assignment of Error I
"The trial court erred in denying [Appellant's] motion to strike statement of proposed damages and in considering [Appellee's] untimely pleading in rendering the damage award by miscalculating the due date of [Appellee's] pleading[.]"
 {¶ 3} In Appellant's first assignment of error, he argues that the trial court should have granted his Civ.R. 12(F) motion to strike Appellee's untimely filed Proposed Statement of Damages. Specifically, Appellant argues that "the trial court erroneously reinstated a deadline which had been supplanted" by a prior order. Appellant also alleges that the court's acceptance of Appellee's untimely Proposed Statement of Damages gave Appellee a competitive and unjustified advantage because it permitted Appellee to review Appellant's computations before submitting his own. Appellant requests that we remand this case for a new damages hearing, barring the court's use of Appellee's Proposed Statement of Damages. We find that Appellant's allegations are without merit.
 {¶ 4} First, we note that this is not a case dealing with the admission of evidence. The proposed statements of damages were merely an aid to the court, similar to a memorandum of law, and not actual evidence. Next, we recognize that the Proposed Statement of Damages is not a pleading under Civ.R. 7(A). Therefore, Civ.R. 12(F), which permits a party to move to strike matters in pleadings, does not apply.[1]
 {¶ 5} Finally, in order to succeed in his claim of error, Appellant must show (1) that an error occurred and (2) that the error was prejudicial. Hampel v. Food Ingredients Specialties, Inc. (2000),89 Ohio St.3d 169, 185. Appellant has failed to show any real prejudice as a result of this alleged error. In this case, the trial court referred to Appellee's Proposed Statement of Damages only once in its judgment, and then only as to undisputed invoices and credits. As to all contested invoices and credits, the trial court used testimony from the damages hearing without reference to Appellee's statement. Given the fact that the court's judgment can be completely reconstructed from evidence presented at the hearing,
without any reference to Appellee's Proposed Statement of Damages, there is no prejudice to Appellant. We find Appellant's first assignment of error to be without merit.
 Assignment of Error II
"The trial court's damage award is against the manifest weight of the evidence as [Appellee] failed to carry his burden of proof as to his damages."
 {¶ 6} In Appellant's second assignment of error, he argues that the trial court damages award is erroneous and against the manifest weight of the evidence. Appellant specifically alleges that the trial court "consistently ignored the evidence" offered by Appellant of prior payments made to Appellee, while accepting the invoices offered by Appellee without question. The court, Appellant states, should have given Appellant credit for all payments to which Appellant testified. We find no merit in Appellant's contention.
 {¶ 7} The standard of review in a manifest weight challenge is the same in both the civil and criminal contexts. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a civil judgment is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 8} An appellate court should not order a new trial where there is merely conflicting evidence. State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14. Rather, that power should only be invoked in extraordinary circumstances where the evidence at trial strongly favors the appellant. State v. Otten (1986), 33 Ohio App.3d 339, 340. Determinations as to the weight given to the evidence and the credibility of witnesses remain the primary responsibility of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 9} At the hearing in this case, both sides presented conflicting evidence to the court regarding possible credits due to Appellant. The trial court, in its judgment entry, carefully detailed the testimony and evidence presented as to each contested credit. The court separately considered each conflicting invoice, check, written notation, and alleged credit.
 {¶ 10} As to invoices, Appellant contested invoices marked as Plaintiff's Exhibits 2, 4, 5, 8, 10, 11, and 13. The Exhibit 2 invoice included a handwritten notation reading $784.00. Appellee explained that this was a base deduction, plus freight, taken from the total invoice amount because some furniture included on the invoice was sold to another party. Appellant argued in his proposed damages statement that the $784.00 plus freight was the entire amount due on the invoice because he had only received items circled on the invoice. But Appellant did not testify to this effect during the hearing. The court had no evidence before it contradicting Appellee's explanation of the Exhibit 2 invoice. The court, therefore, found that Appellant owed all but $784.00 plus freight charges on the Exhibit 2 invoice.
 {¶ 11} The Exhibit 4 invoice has no markings. Appellant argues that Appellee removed all of the furniture in this invoice. As evidence, Appellant testified that he stapled the price tags of removed furniture into a folder he kept for Appellee's account. But Appellant offered no testimony showing that the stapled price tags in any way correlated with this particular invoice. The court found that Appellant owed the entire amount of this invoice.
 {¶ 12} A handwritten notation of $428.69 adorns the Exhibit 5 invoice. Appellee testified that the invoice was for a sofa and loveseat, which would make the handwritten notation a credit to the invoice total. Appellant offered no testimony as to this invoice. The court found that Appellant owed all but $428.69 on this invoice.
 {¶ 13} Plaintiff's Exhibit 8 represented eight glider rocking chairs. Appellant testified that Appellee picked up some of this furniture, and that Appellant should receive credit for that furniture. While Appellee did testify that he picked up some furniture, he only testified that he picked up furniture related to another invoice, for which the court did allow credit to Appellant. Appellant also argues, again, that price tags stapled into his account folder for Appellee prove that the Appellee picked up the furniture. Again, Appellee never offered any testimony connecting these price tags with the items specified in the invoice. In fact, the court noted that one of the items, a sofa, was distinctly absent from the invoice and could not have been credited to this invoice. The court found that Appellant owed the entire amount of this invoice.
 {¶ 14} Appellee admitted that a $549.14 credit should be applied to the Exhibit 10 invoice. Appellant argued that the entire invoice was actually $549.14, but gave neither testimony nor evidence at the hearing supporting this contention. The court held that Appellant owed all but $549.14 of this invoice.
 {¶ 15} The Exhibit 11 invoice has two separate totals listed. Appellee explained that he placed on consignment with Appellant furniture from two different manufacturers in this invoice, thus explaining the two figures. Appellant argued that an entirely different figure, one listed on Plaintiff's Exhibit 15, was the correct figure regardless of the fact that Appellee testified that Exhibit 15 was merely a rough estimate, and not a list of accurate invoice totals. The court found that Appellant owed the entire amount of this invoice.
 {¶ 16} Appellant attacked the credibility of the Exhibit 13 invoice in his proposed damages statement. Appellant, though, did not question the validity of the invoice during the hearing. Appellee testified that Appellant owed the entire amount of the invoice. Appellee offered no evidence to the contrary. The court held that Appellant owed the entire invoice amount.
 {¶ 17} Appellant also claimed that he paid Appellee some monies due by check, made out either to Appellee or Appellee's son. The trial court noted that Appellant made out several checks to Appellee's son, but that Appellee's son worked for Appellant at the time. Appellant offered no evidence to show that the checks were anything more than paychecks for the work of Appellee's son. In fact, there is very little testimony at all regarding the checks made out to Appellee's son.
 {¶ 18} The remaining checks made out by Appellant to Appellee apparently contained no indication of which specific invoices they covered. The court noted that some checks did bear notations: "Albion Invoice," "consigned merchandise," "consigned bedding," and "schulze mattresses." But the court also pointed out that Appellant did not testify as to which specific invoices each check covered. Appellee, on the other hand, testified that all of these checks had already been properly credited to Appellant's account prior to suit. The court disallowed credit on all the checks presented stating that it could not assume that the checks were applicable to the specific invoices in question.
 {¶ 19} After reviewing all of the evidence before the trial court, we cannot say that the judgment is against the manifest weight of the evidence. While the parties offered conflicting evidence on a few points, the trier of fact, in this case the trial court, remains primarily responsible for weighing the evidence and ascertaining the credibility of witnesses. In the multiple cases of conflict, the trier of fact simply chose to believe Appellee's testimony and evidence, or the lack thereof of Appellant's evidence and testimony. We find Appellant's second assignment of error to be without merit.
 {¶ 20} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Baird, J., Batchelder, J. concur.
[1] Nor does Appellant's much cited Miller v. Lint (1980),62 Ohio St.2d 209. In Miller, the trial court permitted a defendant to file an untimely answer without moving for permission of court. The plaintiff filed a motion to strike the untimely answer. The court overruled the motion, proceeding with a trial on the merits. The Ohio Supreme Court stated that a court's discretion permitting a defendant to file their answer out of rule "is not unlimited." Id. at 214. Rather, the plaintiff had a right to have their motion heard on the merits and decided before a trial on the merits occurred. Id.
Miller is easily distinguishable as the answer in that case was undoubtedly a pleading. The failure to file a timely answer triggers the legal right to move for, and possibly receive, default judgment. The Proposed Statement of Damages in this case is not a pleading, and does not trigger any procedural legal right. In other words, if Appellee had failed completely to file a Proposed Statement of Damages in this case, the trial court would not be required to agree completely with Appellant's proposed damages statement. Rather the trial court could, and did, use the testimony from the damages hearing to contradict any statements made by Appellant in his statement.