OPINION
{¶ 1} Appellant, Freedom Steel, Inc., appeals from a final judgment of the Lake County Court of Common Pleas rendered in favor of appellee, Mark Rorabaugh, following a trial by jury. For the reasons discussed below, we affirm.
 {¶ 2} For nearly 30 years, appellee was employed as a salesperson for Famous Enterprises ("Famous"); however, in 2004, appellee determined he found the direction Famous was taking undesirable and resigned. During his tenure at Famous, he became well-acquainted with Avery Schneider, a salesperson employed by appellant. *Page 2 
Upon learning appellee intended on leaving Famous, Schneider helped arrange appellee to obtain a job interview with Tim Jacobs, appellant's owner and president.
 {¶ 3} Jacobs and appellee met twice; at their first meeting, general issues were discussed including appellant's past employment with Famous. During their second meeting, more specific matters were broached. One important question Jacobs directed at appellee was whether, during his employment at Famous, he signed "a non-compete [agreement] or anything."[1] Appellee responded in the negative. Although not disclosed to Jacobs, appellant had signed an employee handbook in February of 1998. Appellee testified he was aware of the handbook but deemed it unimportant because it was not a non-compete agreement.[2]
 {¶ 4} Appellee was offered the job and, after accepting, he met with the owners of Famous, the Blaushilds. He did not disclose that he had accepted new employment. During the meeting, however, the Blaushilds advised appellee that if he intended to work for a competitor, they did not want him to call on any of Famous' customers. In response, appellant stated he did not have a non-compete agreement with them and, accordingly, he would do what he had to do to get a job. By way of rejoinder, the Blaushilds threatened him with a lawsuit. *Page 3 
 {¶ 5} Once appellee began working for appellant, he generated business by utilizing sales leads from appellant's internal connections as well as from his own contacts. Many of appellee's personal sales leads came from old contacts he knew while working at Famous. In March of 2005, appellee was served with a lawsuit filed by Famous in Summit County. In the complaint, Famous alleged violations of Ohio's Trade Secrets Act, interference with contractual business relations, conversion, and breach of contract. Shortly after being served, appellee notified Jacobs of the pending lawsuit. Jacobs questioned him again regarding whether he had signed anything "that would drag us into a lawsuit." Appellee again denied signing such a document insisting "I will prove it to you, and you're going to apologize to me * * *."
 {¶ 6} In light of appellee's denials that he had signed neither a non-compete nor a trade secret agreement, Jacobs kept him under appellant's employ. Eventually, however, appellant was served with a subpoena from Famous seeking disclosure of what Jacobs considered "privileged information." According to Jacobs, the subpoena requested the names of "customers, where they are located, their addresses, who they are, what they buy, what you're selling them price wise, everything about the customers, it's an open book in other words." Appellant fought the subpoena by filing a motion for protective order; however, the trial court overruled the motion. The trial court rendered the ruling a final appealable order and appellant subsequently filed an appeal with the Ninth District Court of Appeals. Before the appeal was heard, appellee and Famous *Page 4 
settled the lawsuit for $11,000.00 and the suit was dismissed with prejudice. As a result, appellant's appeal was rendered moot.
 {¶ 7} On April 4, 2006, after the dismissal, appellant filed suit against appellee in the Lake County Court of Common Pleas alleging fraud. Appellant asserted appellee defrauded appellant by concealing relevant information regarding his past employment which caused it to expend over $18,000.00 in attorney's fees to defend against the subpoena issued by Famous in the Summit County case. Appellee attempted to change venue, which was denied, and, on July 7, 2006, filed its answer. In February of 2007, the matter proceeded to jury trial. After deliberating, the jury returned a verdict in appellee's favor. Afterwards, appellant moved the trial court for judgment notwithstanding the verdict, which was overruled.
 {¶ 8} Appellant now appeals and alleges four assignments of error for our consideration. Its first assignment of error asserts:
 {¶ 9} "The trial court erred in unilaterally providing a jury instruction that confused the issues before the jury and which was not supported by the facts or law of the case."
 {¶ 10} Jury instructions are required to state the law completely and correctly; instructions that are misleading constitute reversible error.Groob v. KeyBank, 108 Ohio St.3d 348, 2006-Ohio-1189, at ¶ 32. "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12, citingParmlee v. Adolph (1875), 28 Ohio St. 10, paragraph two of the syllabus. A trial court's determination as to whether the evidence produced at trial warrants a particular *Page 5 
instruction is reviewed for an abuse of discretion. See Matheson v.Morog (Feb. 2, 2001), 6th Dist. No. E-00-017, 2001 Ohio App. LEXIS 325, *19. Therefore, "a party must demonstrate not merely that the trial court's omission or inclusion of a jury instruction was an error of law or judgment but that the court's attitude was unreasonable, arbitrary or unconscionable." Nails v. Perrin Asphalt, 9th Dist. No. 07CA0010-M,2007-Ohio-6147, at ¶ 10.
 {¶ 11} According to appellant, the trial court sua sponte determined that the only issue in the case was whether appellee defrauded appellant by failing to disclose an agreement to which he was not bound. As a result, the trial court provided the following allegedly problematic instruction:
 {¶ 12} "Plaintiff's Exhibit Number 1 which was the receipt of the Famous Enterprises Associates Handbook; Acknowledgment of Employment Relationship, has been admitted into evidence, but you may accept it only for a limited purpose.
 {¶ 13} "The Court finds this document as a matter of law is not an enforceable non-compete agreement nor is it a valid trade secrets agreement.
 {¶ 14} "In other words, the agreement does not bind the defendant to anything, it only acknowledges the receipt of the handbook and that the defendant is aware of his relationship with Famous Enterprises as an employee.
 {¶ 15} "You may, however, consider the document as an agreement between the defendant and Famous Enterprises."
 {¶ 16} Appellant contends the trial court's instructions regarding the enforceability of the agreement was improper because (1) it did not accurately reflect the law, and (2) *Page 6 
its inclusion violated appellant's right to due process. We shall treat each assertion in turn.
 {¶ 17} Appellant first contends the trial court's instruction improperly instructed the jurors on a factual matter that was not argued and thus not supported by sufficient evidence. Appellant contends that a trial court may not instruct the jury on an issue where the evidence is insufficient to support the instruction. Thus, the trial court erred when it charged the jury with the foregoing instructions.
 {¶ 18} Here, the trial court determined, as a matter of law, that the document at issue was not an enforceable contract and the instruction itself was necessary to prevent the jurors from confusing the issues. According to the court, the document was "merely a receipt for [an employee handbook] and a reminder that he works for a company that has trade secrets." As a result, the court did not want appellant to put the document before the court "like [it is] a bona fide real legal document." In the court's view, appellant's sole issue at trial was "did [appellee] commit fraud on [appellant] when he signed in fact a non-enforceable agreement?"
 {¶ 19} At trial, the document at issue was submitted as "Exhibit 1." The import and significance of Exhibit 1 was discussed and dissected at length during appellee's direct and cross-examination. At the top of Exhibit 1, the document states "RECEIPT OF THE FAMOUS ENTERPRISESASSOCIATE HANDBOOK; ACKNOWLEDGEMENT OF EMPLOYMENT RELATIONSHIP." (Emphasis sic.) Moreover, the third paragraph of the exhibit provides "NOTHING CONTAINED IN THIS HANDBOOK IS INTENDED AS A CONTRACT AND THE POLICIES, RULES AND BENEFITS DESCRIBED IN IT ARE SUBJECT TO CHANGE AT THE SOLE *Page 7 
DISCRETION OF FAMOUS ENTERPRISES WITHOUT NOTICE AT ANY TIME." (Emphasis sic.) Although the document indicates, by signing the receipt, appellee agreed to be bound by the statements contained within it, the document does not mention and thus does not bind appellee (or any acknowledging employee) to a non-compete clause. Moreover, although the document indicates that, by signing the document, appellee would not disseminate or use confidential information "CRITICAL TO THE SUCCESS OF FAMOUS ENTERPRISES" (emphasis sic), it does not use the term nor set forth any general trade secrets any current or past employee must not publish. The document merely states that confidential information, e.g., customer lists, pricing policies or other sensitive information, shall not be disseminated or used "OUTSIDE OF COMPANY PREMISES." As this statement appears in an employee handbook and, moreover, is vague as to what it specifically relates, it is reasonable to conclude that it simply reflects a policy requiring current and past employees not to disclose the information it stipulates as confidential.
 {¶ 20} With the foregoing in mind, we hold that the trial court did not err in providing the instruction at issue. There was sufficient evidence relating to the content of the agreement for the court to make the legal determination as to its enforceability. Moreover, we agree with the trial court's determination that the instruction was necessary to avoid confusion of the issues. The sole issue before the jury was whether appellee defrauded appellant by not disclosing that he signed an employee handbook with his former employer. The nature of the document was fundamentally relevant to the purpose for which the jury would consider the document. If the jury were left to speculate regarding overall impact of the agreement, it could have been misled into *Page 8 
concluding the agreement was an enforceable non-compete/trade secret agreement that signatory employees would be bound to both during and subsequent to their employment with Famous. The face of the document and the evidence submitted at trial did not and would not support such a conclusion.[3] Accordingly, we hold the trial court did not abuse its discretion in instructing the jury as it did.
 {¶ 21} Next, appellant asserts the inclusion of the instruction violated his rights to due process. Due process requires that a party be provided adequate notice of a proposed action as well as an opportunity to be heard. Zamos v. Zamos, 11th Dist. No. 2004-P-0108, 2005-Ohio-6075, at ¶ 18. Appellant maintains the trial court's decision to give the instruction at issue, which occurred after both parties rested, was sudden and thereby depriving him the opportunity to present evidence that the document was an enforceable trade secret agreement. We disagree.
 {¶ 22} Appellant's cause of action was premised upon fraud. The elements of fraud are
 {¶ 23} "`"(a) representation or, where there is a duty to disclose, a concealment of a fact,
 {¶ 24} "`"(b) which is material to the transaction at hand, *Page 9 
 {¶ 25} "`"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 26} "`"(d) with the intent of misleading another into relying upon it,
 {¶ 27} "`"(e) justifiable reliance upon the presentation or concealment, and
 {¶ 28} "`"(f) a resulting injury proximately caused by the reliance."`" Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 475,1998-Ohio-294, quoting Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167,169, quoting Friedland v. Lipman (1980), 68 Ohio App.2d 255, paragraph one of the syllabus; see, also, Sharma v. Sahota (Nov. 21, 2001), 11th Dist. No. 2000-G-2290, 2001-Ohio-8798, *10-*11.
 {¶ 29} Appellant's case was based upon appellee's failure to disclose that he had signed the document at issue. Accordingly, appellant's fraud claim was premised upon the alleged materiality of the concealment. An issue ostensibly (although not necessarily) relevant to the materiality of the concealment would be whether the document was what appellant claimed it was; specifically, an enforceable non-compete/trade secret agreement between appellee and his former employer. As such, appellant was on notice that the nature of the document (i.e., whether it could be reasonably construed as a non-compete or trade secret agreement) as well as its enforceability would be relevant to the first element of its cause of action. Appellant's failure to present evidence on the issue of enforceability, therefore, was not a result of lack of notice; appellant had, at the least, constructive notice that the enforceability of the document could be relevant to its case. Given appellant's fraud claim, appellant had notice of the issue and was therefore obligated to present evidence relating to its belief *Page 10 
that the document was an enforceable, non-compete/trade secret agreement. We therefore hold the trial court did not ambush appellant by instructing the jury as it did and consequently see no violation of due process.
 {¶ 30} Appellant's first assignment of error is without merit.
 {¶ 31} Appellant's second assignment of error asserts:
 {¶ 32} "The trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict."
 {¶ 33} Appellant asserts appellee, during his trial testimony, admitted each element relating to its cause of action for fraud. Therefore, appellant contends the trial court erred in denying appellant's motion for judgment notwithstanding the verdict.
 {¶ 34} In considering a motion for judgment notwithstanding the verdict, a trial court applies the following standard:
 {¶ 35} "The trial judge must construe the evidence most strongly in favor of the non-movant and if upon all the evidence there is substantial evidence to support the non-movant's position upon which reasonable minds may reach different conclusions, the motion must be denied. * * * The trial judge does not determine the weight of the evidence or the credibility of the witnesses * * * and although he examines the materiality of the evidence, he does not look at the conclusions to be drawn." Cardinal v. Family Foot Care Centers,Inc. (1987), 40 Ohio App.3d 181, 183. (Internal citations omitted.)
 {¶ 36} In considering a trial court's judgment relating a judgment notwithstanding the verdict, a reviewing court must address the issue as one of law "`A motion * * * for a judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the *Page 11 
evidence.'" Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68, quoting, O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph three of the syllabus. Accordingly, the standard of appellate review of a trial court's ruling on a motion for judgment notwithstanding the verdict is de novo.
 {¶ 37} As indicated above, to demonstrate fraud, appellant was required to prove a representation which is material to the transaction; made falsely, with knowledge of its falsity, or with such reckless disregard for the truth that knowledge may be inferred; with the intent of misleading another into relying upon it; justifiable reliance upon the representation; and a resulting injury proximately caused by the reliance. Williams, supra. Moreover, a claimant asserting fraud must prove his or her case by clear and convincing evidence. Sharma, supra, citing Sines and Sones, Inc. v. Shell Oil Co. (Sept. 18, 1998), 11th Dist. No. 96-G-2042, 1998 Ohio App. LEXIS 4372, *14. "`Clear and convincing evidence' has been defined as `that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established,'" Ohio State Bar Ass'n v. Reid, 85 Ohio St.3d 327, 331,1999-Ohio-374.
 {¶ 38} The first prong of a fraud cause of action required appellant to prove, by clear and convincing evidence, appellee concealed a matter material to the transaction. Appellant alleges appellee's concealment of the fact that he signed the document at issue was an issue material to him being hired. The evidence indicated that appellant's president, Tim Jacobs, asked appellee, during the interview process, whether he had *Page 12 
signed "a non-compete, something like that, any agreement and he said no." According to appellant, had appellee disclosed that he had signed the document in question to Mr. Jacobs during the interview process, appellant would not have hired him and would not have incurred the litigation expenses to fight the Famous subpoena. We do not believe appellant clearly and convincingly demonstrated the first element of the fraud analysis.
 {¶ 39} The evidence demonstrated that the document at issue was the signature page of an employee handbook indicating appellee received the handbook and acknowledged his rights and obligations as an employee. Appellee clearly signed the document in acknowledgment of its receipt and, in so doing, was recognizing the parameters of his employment relationship with Famous. Nothing on the face of the document indicates appellee had contracted not to compete or entered into a trade secret agreement by signing the notice of receipt. We recognize that the document provides that, in the event of termination, an employee would not use confidential information (e.g., customer lists, pricing policies, or other sensitive information). However, we do not believe this statement is sufficient to transform the employee handbook into a non-compete or trade secret agreement, especially when read in light of the provision, in the same document, underscoring that "NOTHING IN THE HANDBOOK IS INTENDED AS A CONTRACT AND THAT THE POLICIES, RULES AND BENEFITS DESCRIBED IN IT ARE SUBJECT TO CHANGE AT THE SOLE DISCRETION OF FAMOUS ENTERPRISES WITHOUT NOTICE AT ANY TIME."
 {¶ 40} We therefore hold (and endorse the trial court's determination) that the document was neither a binding non-compete agreement nor a binding trade secret *Page 13 
agreement. Thus, appellant failed to prove, by clear and convincing evidence, that appellee concealed information material to the transaction.
 {¶ 41} Moreover, at trial, Mr. Jacobs testified that even had appellee disclosed that he signed the document, he would have discussed its impact of the document with his attorney and then made his decision whether to hire appellee. However, appellant did not provide specific evidence that his attorney would have advised against hiring appellee given the document in question. As a result, appellant failed to demonstrate he would not have hired appellee had he disclosed that he signed the document. In this additional respect, appellant failed to show appellee concealed information that was material to the transaction.
 {¶ 42} Finally, appellant has failed to show the injury at issue, i.e., the incurrence of attorney's fees, was proximately caused by its reliance upon appellee's representations. As just discussed, the evidence at trial did not objectively indicate Mr. Jacobs would have passed upon hiring appellee had he known of the document; in fact, he testified he would have sought the advice of counsel as to the potential impact (if any) of the agreement and then make a final decision. The evidence is therefore inconclusive as to whether appellee's concealment proximately caused appellant's injury under these circumstances. As such, appellant failed to produce clear and convincing evidence that his injury was proximately caused by appellee's omission.
 {¶ 43} As appellant failed to demonstrate, by clear and convincing evidence, the concealment was material to the transaction and that the injury was caused by his reliance on appellant's representations, we need not address the remaining elements of *Page 14 
the fraud cause of action. The trial court did not err in overruling appellant's motion for judgment notwithstanding the verdict.
 {¶ 44} Appellant's third assignment of error claims:
 {¶ 45} "The jurors' verdict was against the manifest weight of the evidence."
 {¶ 46} An appellate court considering an assertion that a verdict is against the manifest weight of the evidence will not reverse a judgment claimed to be against the weight of the evidence if the record contains some competent, credible evidence going to every element of the case.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. If the evidence is susceptible to more than one construction, this court shall afford it that interpretation which is consistent with sustaining the trial court's verdict and judgment. Id. In short, every reasonable presumption must be made in favor of the judgment and the findings of fact. Id.
 {¶ 47} Owing to our analysis of appellant's second assignment of error, we hold the jury's verdict was not against the manifest weight of the evidence. Even if the evidence put forth by appellant could have supported a verdict in its favor, we are compelled to give it the construction most favorable to sustaining the jury's verdict. As we determined appellant failed to clearly and convincingly meet the first and final elements of a cause of action for fraud, the jury's verdict shall be upheld.
 {¶ 48} Appellant's third assignment of error is without merit.
 {¶ 49} Appellant's fourth assignment of error provides:
 {¶ 50} "The trial court abused its discretion when [it] denied the appellant's motion for default judgment and proceeded to trial when the appellee failed to comply with Civ.R. 12(A) and Civ.R. 6(B)." *Page 15 
 {¶ 51} Appellant asserts that because appellee filed his answer beyond the time allotted in the civil rules, the trial court erred in failing to address his motion for default judgment and proceeding to trial. We disagree.
 {¶ 52} The procedural sequence of the underlying case was somewhat strange: appellant filed its complaint on April 4, 2006. Subsequently, on April 24, 2006, appellee filed a motion to change venue to which appellant duly responded on April 27, 2006. On May 18, 2006, the trial court filed its judgment entry denying appellee's motion. Then, on June 28, 2006, the trial court held a status conference after which it set forth all relevant deadlines and dates to which the parties must adhere. Finally, on July 7, 2006, appellee filed its answer, well beyond the 28 day filing deadline set forth under Civ.R. 12(A).
 {¶ 53} After exchanging additional pleadings, conducting discovery, and attempting to proceed through mediation, appellant, on February 5, 2007, nearly seven months after appellee filed his answer and one week before trial, moved to strike appellee's answer and move for default judgment. On February 8, 2007, appellee filed his motion in opposition. Appellee subsequently filed a motion for leave to file his answer "out of turn." Although appellee did not attempt to show the late filing was a result of excusable neglect, the record indicates appellee had different counsel at the time the untimely answer was filed. The trial court granted appellee's motion without analysis. The case was tried and verdict was entered in appellee's favor.
 {¶ 54} Civ.R. 6(B) grants a trial court discretion to extend the time within which an act must be performed. The rule provides: *Page 16 
 {¶ 55} "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2)upon motion made after the expiration of the specified period permit theact to be done where the failure to act was the result of excusableneglect; * * *." (Emphasis added.)
 {¶ 56} Civ.R. 6(B)(2) is applicable to the matter before this court because appellee filed his answer long after the time prescribed by the civil rules passed. Here, appellant moved the court to permit him to file his answer (which had already been filed, accepted, and left unchallenged for seven months) but did not articulate the foundation for his tardiness, i.e., why his neglect of the time limitation under Civ.R. 12(A) excusable.
 {¶ 57} In Miller v. Lint (1980), 62 Ohio St.2d 209, the plaintiff moved for default judgment after the defendant failed to answer or otherwise plead in the allotted time. The defendant filed an answer the next day. The plaintiff filed a motion to strike the answer, but this was denied. The matter proceeded to trial without a ruling on the motion for default judgment, without granting the defendant leave to plead, and without any showing of excusable neglect. In reversing and remanding the matter, the Ohio Supreme Court pointed out that a trial court generally enjoys broad discretion in settling procedural matters; however,
 {¶ 58} "* * * such discretion, as evidenced by Civ.R. 6(B), is not unlimited, and under the circumstances * * * some showing of `excusable neglect' was a necessary *Page 17 
prelude for the filing of an answer. Furthermore, the failure of the defendant to comply, even substantially, with the procedures outlined in the Civil Rules subjected her to the motion for a default judgment, and the plaintiffs, having complied with the Civil Rules, had a right to have their motion heard and decided before the cause proceeded to trial on its merits." Id. at 214.
 {¶ 59} In Matthews v. Rader, 11th Dist. No. 2003-L-092,2005-Ohio-3271, the plaintiff filed a complaint on November 15, 2002. After receiving several extensions to file his answer, the trial court determined the defendant was required to file by February 21, 2003. The defendant failed to file an answer or respond to the complaint. On March 14, 2003, the plaintiff moved for default judgment which was served on defendant. On May 14, 2003, the defendant filed his answer to the complaint. Later the same day, the trial court determined the answer, filed nearly three months after the final deadline, was a nullity and granted the plaintiffs motion for default judgment.
 {¶ 60} On appeal, this court upheld the trial court's decision, pointing out:
 {¶ 61} "The Ohio Supreme Court's holding in Miller is dispositive of the instant case. [The defendant] failed to comply with the requirements of the Civil Rules and failed to demonstrate excusable neglect. [The defendant's] answer was never properly filed; therefore, as the trial court concluded, it was a nullity." Matthews, supra, at ¶ 21; see, also,Rowe v. Stillpass, 4th Dist. No. 06CA1, 2006-Ohio-3789 (cited by appellant for same legal principle).
 {¶ 62} The matter before this court is distinguishable from the foregoing authority. First, appellant waited until the week before the jury trial to file a formal objection to appellee's late filing. The parties had been pursuing and defending their respective *Page 18 
positions for some seven months before appellant determined it would assert its untimeliness argument. The parties had status conferences, exchanged discovery, and attempted mediation; if appellant's actions were not intentionally dilatory, they were nevertheless neglectful in the sense that significant judicial time and energy was dedicated to the matter prior to the motion. Even though appellee failed to strictly comply with the letter of Civ.R. 6(B) we believe the efforts he extended in defending the case represent substantial compliance with the rules as a whole. Under the peculiar circumstances of the case, we therefore hold the trial court did not abuse its discretion in overruling appellant's motion to strike appellee's answer.
 {¶ 63} However, even had the trial court viewed appellant's motion to strike favorably, default judgment would have been an inappropriate vehicle for appellant to seek relief. Civ.R. 55(A) indicates default judgment is proper when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules * * *."
 {¶ 64} Here, appellee did not "fail to plead or otherwise defend" prior to filing its answer. To the contrary, 20 days after the action was filed, appellee moved to change the venue in which the proceedings would take place. Moreover, after the motion was denied, counsel for both parties appeared before the trial court for a June 30, 2006 status conference. In short, appellee submitted pleadings and made several appearances before filing his answer. As a motion for default judgment was inapposite, the proper vehicle, in the unusual context of the case, would have been some form of a motion for pretrial judgment. However, as no such alternative motion was filed, appellant's motion for default judgment was bound to fail. *Page 19 
 {¶ 65} For the reasons set forth above, we hold the trial court did not err in overruling appellant's motion to strike and motion for default judgment. Although appellee did not properly move the court pursuant to Civ.R. 6(B), appellant continued to prosecute its case, engage in discovery, and exchange pleadings with opposing counsel. Appellant's failure to challenge appellee's error until a week prior trial acted, in our view, as a concession to move forward on the merits. Furthermore, even after formally identifying appellee's error, appellant failed to submit its challenge using a procedural mechanism that would afford it the relief it sought. As a result, appellant's final assignment of error is without merit.
 {¶ 66} For the reasons articulated above, appellant's four assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is hereby affirmed.
DIANE V. GRENDELL, P.J., COLLEEN MARY O'TOOLE, J., concur.
[1] Appellee testified Mr. Jacobs merely asked him whether appellee had signed a non-compete agreement. Although the distinction between Jacobs' and appellee's relative testimony is subtle, it proves germane to the issue in the underlying action.
[2] As will be discussed at great length infra, the signature page of the handbook was labeled "Receipt of the Famous Enterprises Associate Handbook; Acknowledgement of Employment Relationship." On the same signature page, the handbook states that "nothing contained in the handbook is intended as a contract." However, it goes on to state "I am aware that during the course of my employment confidential information may be made available to me (e.g., customer lists, pricing policies or other sensitive information). I agree that this information is critical to the success of Famous Enterprises and must not be disseminated or used outside of company premises. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company."
[3] Coincidentally, although not a direct issue relating to the claim set forth in appellant's complaint, the evidence submitted to the jury suggested that, even were the employee handbook construed a binding agreement, for whatever purpose, appellee did not actually violate its terms. To wit, there was no evidence that appellee used any of Famous' stipulated confidential information while working with appellant. Although appellee called upon customers he became acquainted with while working at Famous, he did not "utilize or exploit" any formal customer lists. In fact, he testified those customers he contacted were from memory or personal relationships he established while at Famous. *Page 1