[Cite as *Johnson v. Gutter & Downspout, L.L.C.*, 2024-Ohio-5237.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| FLOY N. JOHNSON | : | |
| | : | |
| Appellee | : | C.A. No. 30090 |
| | : | |
| v. | : | Trial Court Case No. 2022 CV 04771 |
| | : | |
| GUTTER AND DOWNSPOUT LLC, ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 1, 2024

. . . . . . . . . . .

MICHAEL T. COLUMBUS, Attorney for Appellant

SCOTT A. LIBERMAN, Attorney for Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Tia West, appeals from a default judgment granted in favor of Plaintiff-Appellee, Floy N. Johnson. According to West, the trial court abused its

discretion by refusing to let her file an answer out of time when her failure to timely file was based on excusable neglect. West further contends the judgment should be vacated because Johnson failed to include certificates of service for all orders and entries in the trial court, as required by local rules of court.

{¶ 2} After reviewing the record, we find West's assignments of error without merit. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} On October 21, 2022, Johnson filed a complaint for fraudulent transfer against Gutter and Downspout, LLC ("Gutter") and West. The complaint alleged that an individual named Shelia Stewart owned Gutter, that West had a relationship with Gutter, including as a shareholder, officer, and/or employee, and that Johnson had obtained a judgment against Gutter in a 2021 civil action. The 2021 judgment arose from a dispute between Johnson and Gutter regarding work performed at Johnson's home after the May 2019 Dayton tornado. After Johnson tried to resolve the dispute and then threatened to file suit in February 2021, Gutter filed a mechanics lien against Johnson's property on March 18, 2021.

{¶ 4} Shortly thereafter, on March 25, 2021, Stewart, as Gutter's owner, quitclaimed Gutter's interest in three properties to Stewart and West for no consideration and as gifts. Johnson filed suit against Gutter and others in May 2021 and received a judgment in August 2021. The judgment declared the mechanic's lien void and unenforceable and granted Johnson $28,991.36 in money damages, which included

$14,495.68 in punitive damages.   In addition, the court awarded Johnson $5,240 in attorney fees.   After the judgment entry was filed, Stewart quitclaimed her interest in all three properties to West for no consideration in September 2021.   However, these quitclaim deeds were not recorded until December 2021.   In the meantime, Johnson had filed a certificate of judgment against Gutter.   Complaint, ¶ 1-18.

{¶ 5} According to the complaint, the transfers were done by Gutter, Stewart, and West in order to hinder, delay, and defraud Johnson in her attempt to collect on the civil judgment.   Johnson further alleged that Gutter retained possession and control of the properties after the transfers, that the transfers were done knowing of a threat of litigation, and that the transfers consisted of substantially all of Gutter's assets.   *Id.* at ¶ 21-24. The complaint asked that the transfers be voided and for an award of damages and attorney fees.

{¶ 6} Both defendants were successfully served with summons (West in October 2022 and Gutter in December 2022).   In November 2022, Johnson asked the court to give West an extension of time until December 21, 2022, to answer the complaint; the court granted the request.   The extension was based on the parties' attempts to resolve the matter and West's request that Johnson seek a continuance.   In total, Johnson sought and received seven extensions of time for West to answer, with the last extension requiring West to serve her answer by May 19, 2023.   *See* Order (May 5, 2023).   Gutter never filed an answer and never received any extensions to do so.

{¶ 7} West failed to file an answer by May 19, 2023.   As a result, on June 6, 2023, Johnson filed a notice of intent to file a motion for default judgment on or after June 20,

2023. This notice included a certificate of service indicating that Johnson's attorney had mailed a copy of the notice to both Gutter and West. On June 21, 2023, Johnson's counsel filed an update for the court, noting that he had become aware of other litigation that might impact the current case and needed time to investigate. Counsel stated that he would file a motion for default judgment or other dispositive motion or would further report to the court on or before July 6, 2023. Again, this update included a certificate of service indicating Johnson had sent a copy by mail to both Gutter and West.

{¶ 8} Johnson filed a second update on July 6, 2023, stating that additional time was needed, with a further update or dispositive motion to be filed by July 23, 2023. As before, the update included an appropriate certificate of service. Third, fourth, and fifth updates were filed with the court, with the final update filed on September 21, 2023. At that time, Johnson's counsel said that if the other litigation were not resolved, he would file a motion for default judgment or a further update on or before October 21, 2023. Again, certificates of service to both Gutter and West were included.

{¶ 9} On September 27, 2023, the court filed a notice stating that the case would be dismissed, without prejudice, for failure to prosecute unless Johnson filed a motion for default judgment or other dispositive motion within 14 days. On October 10, 2023, Johnson filed a motion for default judgment against both Gutter and West. In the motion, Johnson asked the court to grant default judgment and to include findings setting aside all the conveyances that had been fraudulently filed. Johnson also asked for attorney fees and costs to be awarded against Gutter and West. Again, proper certificates of service were included. An affidavit from Johnson's attorney was also attached, outlining

the amount of attorney fees and costs Johnson had incurred. In addition, Johnson filed an affidavit from another attorney stating that these fees and costs were necessary and reasonable.

{¶ 10} On October 11, 2023, the trial court filed a notification of a non-oral hearing on the default judgment motion. Pursuant to Civ.R. 55, the non-oral hearing was set for October 23, 2023, and the court sent notice of the hearing to both Gutter and West. On October 23, 2023, West filed a pro se answer. However, the court refused to accept West's answer because it was untimely and West did not provide any basis for finding excusable neglect. Decision and Entry Overruling Plaintiff's Motion for Default Judgment (Oct. 31, 2023), p. 3-4. At that time, the court also overruled the default judgment motion due to Johnson's failure to name Stewart as a party; because Stewart had not been named, the court believed it could void the first three transfers from Gutter to Stewart and West, but it did not think it could void the second set of transfers from Stewart to West. *Id.* at p. 4-6.

{¶ 11} Subsequently, the court filed a show cause order. In the order, the court noted that after its default judgment decision, Johnson failed to seek leave to amend the complaint to add Stewart as a party. The court gave Johnson 14 days to respond to the show cause order. Johnson then filed a response, asking the court to reconsider its default judgment decision or alternatively to grant her leave to amend the complaint. In the response, Johnson provided the court with authority indicating that Stewart was not a necessary party. Alternatively, if the court disagreed, Johnson asked for leave to amend the complaint to eliminate the claim regarding the second set of transfers, which would

let her proceed against one-half of the property. As with the other documents filed, Johnson included a certificate of service stating that she had sent a paper copy of the motion to both West and Gutter.

{¶ 12} In December 2023, the trial court granted the motion for reconsideration and found that Stewart was not a necessary party. The court therefore granted Johnson's motion for default judgment and ordered him to file a proposed final judgment entry. In January 2024, the court also filed a decision granting default judgment on Johnson's claim for monetary damages. *See* Order Granting Motion for Default Judgment as to Plaintiff's Claims for Monetary Damages (Jan. 30, 2024). The court concluded the defendants had acted in bad faith, and it therefore awarded Johnson $6,730.58 in attorney fees, as well as costs, postjudgment interest, and continuing attorney fees and costs. *Id.* at p. 4-5.

{¶ 13} In a later entry, the court granted default judgment to Johnson concerning the fraudulent transfer of property. *See* Final and Appealable Order and Entry Granting Default Judgment as to Plaintiff's Claim for Fraudulent Transfer (Mar. 5, 2024). The court set aside all the conveyances mentioned in the complaint as fraudulent transfers intended to "hinder, defraud or delay collection of amounts due Plaintiff from Gutter and Downspout, LLC." *Id.* at p. 2. Gutter and West then timely appealed from the final order. Gutter's appeal was docketed separately, but was later dismissed at Gutter's request. *See Johnson v. Gutter and Downspout, LLC*, 2d Dist. No. 30089, Decision and Entry (June 25, 2024).

## II.  Excusable Neglect

{¶ 14} West's first assignment of error states that:

Appellant's Untimely Answer Was the Result of Excusable Neglect and the Trial Court Abused Its Discretion by Not Permitting Her to File Out of Time.

{¶ 15} Under this assignment of error, West contends the trial court should have accepted her answer because her failure to timely file was excusable neglect and did not show a disregard for the judicial system. We disagree.

{¶ 16} Under Civ.R. 12(A), a defendant "shall serve his answer within twenty-eight days after service of the summons and complaint upon him." Clearly, that did not occur here, as West was served in October 2022 and did not file an answer until late October 2023. In this regard, Civ.R. 6(B) provides that when "an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

{¶ 17} Trial courts have broad discretion in procedural matters, but "such discretion, as evidenced by Civ.R. 6(B), is not unlimited." *Miller v. Lint*, 62 Ohio St.2d 209, 214 (1980). "Generally, some showing of excusable neglect is a necessary prelude to the filing of an untimely answer." *Alldred v. Alldred*, 1998 WL 769814, *2 (2d Dist. Nov. 6, 1988), citing *Miller*. "In determining whether neglect is excusable or inexcusable, all the surrounding facts and circumstances must be taken into consideration." *Davis v. Immediate Med. Servs., Inc.*, 80 Ohio St.3d 10, 14 (1997), citing *Griffey v. Rajan*, 33 Ohio St.3d 75 (1987), syllabus. "Neglect under Civ.R. 6(B)(2) has been described as conduct

that falls substantially below what is reasonable under the circumstances." *Id.*, citing *State ex rel. Weiss v. Indus. Comm.*, 65 Ohio St.3d 470, 473 (1992).

{¶ 18} The test for excusable neglect in this context is less stringent than the standard used for Civ.R. 60(B) motions. (Citations omitted.) *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.*, 72 Ohio St.3d 464, 466 (1995). *Accord Epicor Software Corp. v. Sample Machining Co.*, 2005-Ohio-2234, ¶ 57 (2d Dist.). To decide if excusable neglect has been shown, courts "must examine 'the danger of prejudice to the [movant], the length of delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' " *First Union-Lehman Bros.-Bank of Am. Commercial Mtge. Trust v. Pillar Real Estate Advisors, Inc.*, 2014-Ohio-1105, ¶ 15 (2d Dist.), quoting *Cleveland Mun. School Dist. v. Farson*, 2008-Ohio-912, ¶ 12 (8th Dist.).

{¶ 19} An abuse of discretion "has been described as including a ruling that lacks a 'sound reasoning process.' " *State v. Morris*, 2012-Ohio-2407, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Here, the trial court's decision was based on sound reasoning. Specifically, West failed to file an answer for about a year after the complaint was filed. Although the parties were negotiating during part of that time, nothing prevented West from filing an answer. Furthermore, even after learning that Johnson would no longer negotiate and would seek default, West still failed to file an answer for months. In addition, the trial court notified West of the date on which an non-oral hearing on default

would occur, and West waited until the last possible day to file an answer.

**{¶ 20}** Finally, and fatally, West did not even attempt to show cause or excusable neglect when she filed her answer.   While West was a pro se litigant at the time, "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants."   *Yocum v. Means*, 2002-Ohio-3803, ¶ 20 (2d Dist.), citing *Kilroy v. B.H. Lakeshore Co.* 111 Ohio App.3d 357 (8th Dist. 1996).   Consequently, "a pro se litigant 'cannot expect or demand special treatment from the judge, who is to sit as impartial arbiter.' "   *Id.*, quoting *Kilroy* at 363.

**{¶ 21}** In *Miller*, 62 Ohio St.2d 209, the defendant's failure was much like what occurred here, as the defendant simply filed a late answer after receiving notice of the default judgment motion.   The defendant also failed to file a motion as required by Civ.R. 6(B) and did not seek to demonstrate excusable neglect.   *Id.* at 214.   Under these circumstances, the Supreme Court of Ohio found the defendant's failure "to comply, even substantially, with the procedures outlined in the Civil Rules subjected her to the motion for a default judgment."   *Id.*   The same reasoning applies here.   Accordingly, West's first assignment of error is without merit and is overruled.

### III.   Certificates of Service

**{¶ 22}** West's second assignment of error states that:

Appellee Failed to Provide a Certificate of Service for All Orders and Entries Filed at the Trial Court Which Failed to Comply with the Montgomery County Local Rules and Is Grounds for Vacating the Judgments.

{¶ 23} Under this assignment of error, West contends the default judgment must be vacated because Johnson failed to include a certificate of service for orders and entries filed in the trial court. West Brief, p. 4-5, citing Mont. Co. C.P.R. 2.17(A)(2)(a) and (b), and Mont. Co. C.P.R. 1.15(H)(4)(a)(iii), (b)(ii), and (c)(i) and (ii).[1] West does not discuss any specific entry or order but states that: "Every entry and order filed at the trial court failed to comply with the Montgomery County Local Rules, and the judgment against Appellant must be vacated." West Brief at p. 4.

{¶ 24} In response, Johnson notes that the motion for default judgment and motion for reconsideration both included a certificate of service as required. Johnson further notes the record does not reveal any entries that failed to comply with the local rules. *See* Johnson Brief, p. 4. We agree. As we indicated above, Johnson included a certificate of service on all relevant pleadings and also stated that she had mailed paper copies to both West and Gutter. All entries are also proper. Consequently, West's argument lacks merit, and the second assignment of error is overruled.

IV. Conclusion

{¶ 25} Both of West's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

---

[1] The Montgomery County Common Pleas Court Local Rules were revised effective July 1, 2024. The former rules are similar to current Mont Co. C.P.R. 4.02(A), (B), and (D); Mont. Co. C.P.R. 6.03(B)(1)(a)-(d); and Mont. Co. C.P.R. 6.07(A). Essentially, both the former and current local rules require parties to place certificates of service on documents they file and to serve paper copies of filings on pro se litigants who are not registered users with the court's e-filing system.

EPLEY, P.J. and TUCKER, J., concur.